97 A.3d 275

WAYNE M. CHIURAZZI LAW INC. d/b/a Chiurazzi & Mengine, LLC; and David A. Neely, Esquire, Appellants

v.

MRO CORPORATION, Appellee.

Supreme Court of Pennsylvania.

Argued Oct. 16, 2012.

Decided June 16, 2014.

304

Paul Adams Lagnese, Esq., David McCaffery Paul, Esq., Berger & Lagnese, L.L.C., James Pietz, Esq., Pittsburgh, for Wayne M. Chiurazzi Law Inc., et al.

Clifford Alan Rieders, Esq., Rieders, Travis, Humphrey, Harris, Waters & Waffenschmidt, Williamsport, for Pennsylvania Association for Justice.

Jennifer Ann Callery, Esq., Carl A. Solano, Esq., Philadelphia, Schnader Harrison Segal & Lewis, L.L.P., for MRO Corporation.

Lisa Whitcomb Clark, Esq., David Edwin Loder, Esq., Melissa Sobel Snyder, Esq., Duane Morris, L.L.P., Philadel-

phia, for The Hospital & Healthsystem Association of Pennsylvania.

Richard William Hosking, Esq., K & L Gates, L.L.P., Pittsburgh, James Christopher Swetz, Esq., Stroudsburg, for Healthport Technologies LLC.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## OPINION

Chief Justice CASTILLE.

This appeal involves the discretionary review of a matter that proceeded as an interlocutory appeal by permission in the Superior Court. The primary issue is whether Sections 6152(a)(1) and (a)(2)(i) of the Medical Records Act ("MRA" or "Act"), 42 Pa.C.S. §§ 6151–6160, require businesses such as appellee MRO Corporation ("MRO"), which reproduce medical records for patients and their representatives, to limit their copying charges to their estimated actual and reasonable expenses of reproducing requested charts or records (subject to a statutory ceiling rate), or whether such businesses may simply charge the statutory ceiling rate. In addition, appellants ask us to review the Superior Court's finding that, where a medical records reproducer fails to disclose and charge its estimated actual and reasonable expenses and instead charges the MRA's ceiling rates which the records requestor then pays, the defenses of "voluntary payment" and "prior approval" bar the records requestor from maintaining a breach of contract claim to recoup alleged overpayments. For the reasons set forth below, we reverse the Superior Court and remand the matter to the trial court for proceedings consistent with this Opinion.

## - I -

The MRA was enacted in 1986. The Act recognizes that a patient has a right to his own medical records; authorizes the use of certified copies of original medical records at trials and

other proceedings without the necessity of preliminary testimony respecting foundation, identity and authenticity; streamlines the process for securing copies of medical records; and, of pertinence here, addresses what medical records providers can charge for the copies provided. *Id.* §§ 6151, 6152.1, 6155(b).

This appeal concerns the version of the MRA in effect when this action arose in 2009. Most pertinently, Sections 6152(a)(1) and (a)(2)(i) then provided:

(a) **Election.**—

(1) When a subpoena duces tecum is served upon any health care provider or an employee of any health care facility licensed under the laws of this Commonwealth, requiring the production of any medical charts or records at any action or proceeding, it shall be deemed a sufficient response to the subpoena if the health care provider or health care facility notifies the attorney for the party causing service of the subpoena, within three days of receipt of the subpoena, of the health care provider's or facility's election to proceed under this subchapter **and of the estimated actual and reasonable expenses of reproducing the charts or records.** However, when medical charts or records are requested by a district attorney or by an independent or executive agency of the Commonwealth, notice pursuant to this section shall not be deemed a sufficient response to the subpoena duces tecum.

(2)(i) Except as provided in subparagraph (ii), the health care provider or facility or a designated agent shall be entitled to receive payment of such expenses before producing the charts or records. The payment shall not exceed $15 for searching for and retrieving the records, $1 per page for paper copies for the first 20 pages, 75¢ per page for pages 21 through 60 and 25¢ per page for pages 61 and thereafter; $1.50 per page for copies from microfilm; plus the actual cost of postage, shipping or delivery. No other charges for the retrieval, copying and shipping or delivery of medical records other than those set forth in this paragraph shall be permitted without prior approval of the party

requesting the copying of the medical records. The amounts which may be charged shall be adjusted annually beginning on January 1, 2000, by the Secretary of Health of the Commonwealth based on the most recent changes in the consumer price index reported annually by the Bureau of Labor Statistics of the United States Department of Labor.

42 Pa.C.S. § 6152(a)(1), (a)(2)(i) (emphasis added). After this Court granted review, the General Assembly amended the Act effective September 4, 2012 and deleted the conjunctive language highlighted in subsection (a)(1) above ("and of the estimated actual and reasonable expenses of reproducing the charts or records") which is central to the present dispute. As a number of similar actions remain pending, however,[1] resolution of the issues before us remain of broad importance.[2]

## - II -

Based in King of Prussia, Pennsylvania, MRO is a medical records reproduction company that has exclusive agreements with certain Pennsylvania hospitals and hospital systems, including their affiliated physician practice groups, imaging centers and clinics, to provide medical records to requestors. Appellants are attorneys with offices in Pittsburgh who filed this class action in July of 2009 on behalf of medical records requestors, including patients, patient designees, representa-

---

1. A number of similar class actions against Pittsburgh area entities that furnish medical records apparently remain pending.

2. In the wake of the amendment to the Act, MRO filed an application for summary affirmance of the Superior Court's decision or, in the alternative, dismissal of this appeal as improvidently granted. MRO argued that the 2012 amendment made clear the General Assembly's intention respecting the version of the Act at issue here. Appellants responded that the amended Act cannot retroactively determine this appeal because the Legislature has no power to direct the outcome of pending cases, and, in any event, the amendments have no retroactive application because the Legislature did not expressly provide for retroactive application. This Court has already denied the application by *per curiam* order, and we will not revisit the issue. *See generally Commonwealth v. Diodoro*, 601 Pa. 6, 970 A.2d 1100, 1108 ("the legislative actions of a later General Assembly are not probative of the legislative intent of a prior General Assembly."), *cert. denied*, 558 U.S. 875, 130 S.Ct. 200, 175 L.Ed.2d 127 (2009).

tives and attorneys, alleging that MRO overcharged for reproduction of medical records.

On March 15, 2010, appellants filed a Second Amended Class Action Complaint. Appellants alleged that the MRA required a medical records reproducer to provide records "for a fee derived from the actual and reasonable cost of searching for, retrieving, reproducing and transmitting the records," but MRO instead charged fees exceeding its actual and reasonable costs, resulting in MRO profiting from the sale of hospital patient medical records. Second Amended Complaint at 1. Appellants alleged that MRO had become the exclusive source through which a requestor must obtain copies of medical records from facilities with which MRO contracted.

Appellants alleged that technological advances have greatly reduced the costs of storage and reproduction of medical records. Prior to the use of computer technology in hospital medical record keeping, when a request was made for copies of medical records, the patient's medical chart (which consisted of numerous sheets of paper, sometimes printed on front and back and/or in tri- or bi-fold format, two-hole punched and held together by a metal clip), was retrieved from an in-house or off-site storage location. The party producing photocopies would need to take the sheets of paper out of clips, photocopy the records by hand, reassemble the chart and return it to storage, then assemble and mail the copies to the requestor. Now, however, medical records are increasingly created and stored in electronic form, the records can be retrieved and printed instantly, copied to CD–ROM, or electronically transmitted to the requestor. Thus, appellants alleged, although the cost of storing, locating, retrieving, copying and transmitting medical records has decreased dramatically, MRO's fees have not reflected those actual, lower costs for the reproduction of records.

Appellants further noted that the MRA requires an entity such as MRO to provide a records requestor with its estimated actual and reasonable expenses of reproducing the requested records. Appellants alleged that MRO did not follow that procedure, but instead automatically charged the statutory

maximum search and retrieval fee and the maximum fee for photocopies of paper records, with no consideration of its actual costs.

Based upon these allegations, appellants asserted two counts for relief, one for breach of contract/implied contract and the second pursuant to the Declaratory Judgments Act, 42 Pa.C.S. §§ 7531–7541. The breach of contract count alleged that contracts existed between MRO and the appellant requestors, which required MRO to reproduce medical records in a manner consistent with the MRA, and that MRO failed to comply with the Act, thereby breaching the contracts. Appellants demanded monetary damages; an order enjoining MRO from charging in excess of its actual and reasonable expenses of reproduction; an accounting of sums billed to records requestors since June 15, 2005; prejudgment interest; and punitive damages. On the second count, appellants sought a declaration that MRO's conduct constituted a breach of contract, as well as costs and attorney's fees.[3]

MRO filed preliminary objections, claiming, in relevant part to this interlocutory matter, that appellants invoked the "estimated actual and reasonable expenses" language of Section 6152(a)(1), yet the record requests appellants made were pursuant to Section 6155, which governs a patient's request for his own records. MRO noted that the MRA provided two means for requesting records: (1) a subpoena *duces tecum* under Section 6152; or (2) a patient authorization seeking the patient's records under Section 6155(b)(1).[4] MRO argued that

---

3. The Second Amended Complaint also contained additional claims not relevant to our discretionary review of the narrow interlocutory appeal, including that: (1) MRO improperly charged appellants sales tax; (2) appellants had no other means of obtaining the requested documents and were therefore powerless against MRO's billing practices; and (3) the required elements of a class action were present.

4. Section 6155(b)(1) provides:

A patient or his designee, including his attorney, shall have the right of access to his medical charts and records and to obtain photocopies of the same, without the use of a subpoena duces tecum, for his own use. A health care provider or facility shall not charge a patient or his designee, including his attorney, a fee in excess of the amounts set forth in section 6152(a)(2)(i) (relating to subpoena of records).

Section 6155(b)(1) does not include an "estimated actual and reasonable expenses of reproducing" qualifier, and thus permits a records reproducer to charge any fee not in excess of the rate ceiling set forth in Section 6152(a)(2)(i). MRO noted that appellants admitted that the fees MRO charged did not exceed the Section 6152(a)(2)(i) rate ceiling; therefore, MRO argued, it had complied with Section 6155. MRO also argued that its practice of automatically charging the statutory ceiling rate was authorized by the Court in *Liss & Marion, P.C. v. Recordex Acquisition Corp.*, 603 Pa. 198, 983 A.2d 652 (2009).

MRO further raised the defense of voluntary payment, i.e., a defense that, "one who has voluntarily paid money with full knowledge, or means of knowledge of all the facts, without any fraud having been practiced upon him ... cannot recover it back by reason of the payment having been made under a mistake or error as to the applicable rules of law." *Liss*, 983 A.2d at 661 (Pa.2009) (quoting *In re Kennedy's Estate*, 321 Pa. 225, 183 A. 798, 802 (1936)). MRO claimed that appellants had received invoices from MRO and voluntarily paid them, triggering the voluntary payment doctrine defense.

Appellants answered MRO's preliminary objections, arguing that the MRA limits a medical records reproducer to its actual and reasonable expenses regardless of whether the request was via subpoena or patient authorization. Appellants argued that Section 6155(b)(1)'s reference to the "amounts set forth in section 6152(a)(2)(i)" necessarily encompassed the section's "estimated actual and reasonable expenses" language. Further, appellants argued that the *Liss* Court found that medical records reproducers must comply with Section 6152(a)(2)(i) regardless of whether records are sought by subpoena because the records requests in *Liss* were by patient authorization. Thus, appellants concluded, Section 6155 requires a medical records reproducer to identify and charge its actual and reasonable expenses of reproduction or the maximum rates set forth in Section 6152(a)(2)(i), **whichever is less.**

42 Pa.C.S. § 6155(b)(1).

Appellants did not respond to MRO's voluntary payment doctrine defense.

On June 17, 2010, the Court of Common Pleas of Allegheny County, per the Honorable R. Stanton Wettick, Jr., overruled MRO's preliminary objections. The trial court's accompanying opinion framed the issue succinctly:

> [Appellants] contend that a health care facility may only charge its actual and reasonable expenses where those expenses are less than the amount set forth in the second sentence of § 6152(a)(2)(i) as adjusted. [MRO], on the other hand, contends that it may impose any charge that does not exceed the amounts permitted within the second sentence as adjusted.
>
> If [MRO's] construction of the Medical Records Act is correct, this case and all related litigation will be dismissed. However, if [appellants'] construction of the Medical Records Act is correct, this litigation will require consideration of several (possibly complicated) factual and legal issues, including what are actual and reasonable expenses, the applicability of the voluntary payment doctrine, and the applicability of the prior approval provision of § 6152(a)(2)(i).

Tr. Ct. Op. at 3.

In its ensuing analysis, the trial court first discussed the effect of the *Liss* decision, stating that, pursuant to *Liss*, appellants could pursue a breach of contract action against MRO based on their allegations that MRO's charges exceeded the permissible charges under the Act, and that MRO could not charge in excess of the default rate for the copies at issue because the copies were not from microfilm. The trial court noted that appellants did not allege that MRO charged more than the statutory maximum rate, but that its charges did not reflect their lower actual costs of reproduction. The court further observed that the issue before it was not presented in *Liss*, because the dispute in that case only concerned which rate, the default rate or the microfilm rate, applied.

The trial court reasoned that the ordinary meaning of Section 6152(a)(1) is that *"actual expenses* means expenses existing in fact, and *reasonable expenses* means that the costs are not padded." *Id.* at 6 (emphasis in original). The court then looked to Section 6152(a)(2)(i), which states that, "the health care provider or facility or a designated agent shall be entitled to receive payment of such expenses before producing the charts or records." The court interpreted the term "such expenses" as obviously referring back to the "actual and reasonable expenses of reproduction" language in the prior paragraph. Thus, the trial court concluded, Section 6152(a)(2)(i)'s reference to "such" expenses "clearly and unambiguously provides that charges shall be based on actual and reasonable expenses." *Id.* The court then explained its reasoning in rejecting MRO's argument that it could charge any amount up to the statutory ceiling rate, as follows:

The second sentence of § 6152(a)(2)(i) does not provide that a health care provider is entitled to receive additional payments in excess of actual expenses. To the contrary, while the previous provision of § 6152 entitles the health care provider to receive actual and reasonable expenses, this second sentence of § 6152(a)(2)(i) places a cap on what may be charged as actual and reasonable expenses by providing that the payment of actual and reasonable expenses "shall not exceed" the amounts set forth in this sentence. Or, in other words, this sentence applies only to health care providers whose actual expenses exceed the amounts set forth in the pricing schedule.

* * *

I recognize that there can be legislation which provides for charges to be based on reasonable expenses and which thereafter includes a formula to calculate reasonable expenses. However, the Medical Records Act is not such legislation. Nothing in the language of the Act suggests that the charges in the second sentence are presumed to be actual expenses. To the contrary, the use of the language "shall not exceed" modifies a health care provider's entitlement to recover actual expenses by setting the maximum

amount that may be charged where the actual expenses exceed this amount.

*Id.* at 7–8 (footnote omitted).

The trial court further noted the statutory construction precepts that (1) the General Assembly intends the entire statute to be effective, and thus, a statute should be construed to give effect to all of its provisions, and (2) provisions are to be read *in pari materia* when they relate to the same issues and should be construed together where possible. *Id.* at 8, citing 1 Pa.C.S. §§ 1922(2), 1932. MRO's interpretation of the MRA, the court observed, would substitute the word "charges" for "actual expenses," with the result that the records provider would notify the requestor of estimated charges rather than its estimated actual and reasonable expenses of reproduction. The court opined that it was obliged to construe the actual word in the statute, "expenses," and not MRO's substitute language, "charges." *Id.* at 8–9.

Respecting MRO's argument that the "actual and reasonable expenses" language applies only to records sought via subpoena and not records requested via patient authorization, the trial court stressed the language in Section 6155(b)(1) stating that a provider shall not charge "a fee in excess of the amounts set forth in section 6152(a)(2)(i) (relating to subpoena of records)." This language does not refer only to the second sentence of Section 6152(a)(2)(i) (the pricing schedule), but also embraces the "such expenses" language that, the trial court had concluded, means actual and reasonable expenses of reproduction. The trial court also pointed to *Liss*, where records were sought through patient authorization, and yet the Court applied Section 6152. Finally, the trial court determined that to allow a records provider to charge more for records sought via patient authorization than via subpoena would produce an unreasonable result. *Id.* at 10–12. The trial court did not address or decide the voluntary payment and prior approval defenses MRO raised, instead confining its decision to the potentially controlling issue of statutory construction.

In response to MRO's request, the trial court certified its interlocutory order for immediate appeal pursuant to 42 Pa. C.S. § 702(b), which governs interlocutory appeals by permission. The court's certification stated that the order construing the Act as prohibiting charges that exceed the records provider's actual and reasonable expenses "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal may materially advance the ultimate termination of the matter." On August 18, 2010, the Superior Court granted MRO permission to appeal the interlocutory order.

Thereafter, in a published opinion, a divided 2–1 Superior Court panel reversed and remanded for entry of an order granting MRO's preliminary objections and dismissing the complaint. *Wayne M. Chiurazzi Law Inc. v. MRO Corp.*, 27 A.3d 1272 (Pa.Super.2011). The panel majority noted that MRO raised four issues:

1. Is an entity that reproduces medical records without a subpoena required to charge its "actual and reasonable expenses" for its services, thereby foregoing recovery of any profit, rather than charging the safeharbor prices specified in Section 6152(a)(2)(i) of the Act?

2. Even if a health care entity producing records is limited to recovery of its own "actual and reasonable expenses," does that limitation apply to an independent for-profit company that reproduces records for the health care entities, thereby preventing such a company from recovering a profit?

3. May the producing entity charge the prices specified in Section 6152(a)(2)(i) under the section's "prior approval" provision if it gives the customer an invoice setting forth the prices and the customer reviews and pays the invoice without objection before receiving the records?

4. Does the Medical Records Act permit a medical records reproduction company or other producing party to collect and remit sales tax in connection with its services?

*Id.* at 1276–77. The latter two questions were not passed upon by Judge Wettick, nor were they the subject of his certification of the interlocutory order.[5]

The panel majority deemed the first three issues to be interrelated. The court summarized MRO's position as being that the trial court misread the MRA in holding that MRO is only permitted to bill its actual and reasonable expenses, subject to a statutory cap; and the trial court's reading, MRO said, threatened to put private companies like MRO out of business and conflicted with the *Liss* decision. Addressing the issues concurrently, the appellate court began its analysis with an extended block quotation from the "Background" section of the *Liss* opinion, a quotation that ended with the issues presented in *Liss.* Within that *Liss* quotation, the court below emphasized that the pertinent issue in *Liss* was stated in terms of whether the MRA required "that copying of any records other than those stored on microfilm be billed **at the rate specified** for copying records stored on paper." 27 A.3d at 1279, quoting *Liss,* 983 A.2d at 657 (emphasis added by panel majority below). As relevant here, the court then noted that appellants argued that *Liss* was distinguishable because the case "did not specifically answer whether the 'estimated actual and reasonable expenses' language in section 6152(a)(1) prevents the use or applicability of the fee schedule unless those actual expenses exceed the amounts listed in the fee schedule." *Id.* The court disagreed, stating that "*Liss* is controlling as to the fees that are charged under the Act for paper copies of medical records." *Id.*

The majority explained its conclusion as follows. First, the court rejected MRO's distinction premised upon whether a subpoena was employed. The court agreed with *Liss* and Judge Wettick that Section 6152(a) applies as a result of the reference in Section 6155(b)(1) to the "amounts" that may be

5. In its Superior Court brief, MRO acknowledged that its third and fourth questions had not been passed upon or certified, as its Statement of Questions provided that the "answer below" to each question was: "Not specifically addressed, but impliedly answered No." MRO Superior Court Brief, 3. In fact, the trial court did not address or decide these questions at all, directly or impliedly.

charged as set forth in Section 6152(a)(2)(i). Nor, in the court's view, did it matter in what medium the requested records were stored and from which copies were transferred. Rather, the court viewed the issue similarly to the trial court, *i.e.*, as posing a basic question of "whether the rates provided under the Act are *per se* reasonable fees that constitute safe harbor rates, or whether they are just a cap on actual expenses that must be calculated on a case-by-case basis. . . ." 27 A.3d at 1280. In answering the question, the court deemed it significant that *Liss* had labeled the pricing schedule a "rate" rather than a "price cap" in its analysis:

> The Court in *Liss* began its discussion of the rate issue by stating: "[h]aving established that Appellee properly stated a contract claim against Appellants, we turn next to the question of whether Appellants breached the parties' contract by charging rate M [ (copies from microfilm) ] rather than rate D [ (copies from all media other than microfilm) ] for copies from electronic records." *Liss*, 603 Pa. at 215, 983 A.2d at 662. As can be seen from this quote from *Liss*, the Supreme Court labels the fees as rates, and not price caps for the varied and case specific actual and reasonable expenses. Nowhere does the Court interpret the Act as requiring that a record reproducer bill only the actual and reasonable cost for paper copies; the Court concludes that the Act refers to a billing rate. Moreover, the Court ultimately calls the fee set for copying from any media other than microfilm ("rate D") the "default rate" and states that the reproducer of the records is "entitled to receive rate D per page." *Id.* at 216–217, 983 A.2d at 662–663. Also, the language of the Act itself uses "shall not exceed" for copying charges as opposed to "actual cost" language for shipping charges. This suggests copying charges are not cost-based.

*Id.* The court then concluded that *Liss* was dispositive regarding the "rate" to be charged for paper copies—the rate is the pricing schedule in Section 6152(a)(2)(i).

The majority added that it found further support for its conclusion in the first sentence of Section 6152(a)(1), which

refers to "estimated" actual and reasonable expenses of reproducing records:

> [E]ven accepting the trial court's conclusion that the "such expenses" language of § 6152[ (a) ](2)(i) refers to that language, it is referring to an estimate. Thus, it is reasonable to conclude that the rates that follow create safe harbor rates for the estimated actual and reasonable expenses of producing paper copies.

*Id.* The court held that the trial court erred in denying MRO's preliminary objections on grounds that MRO was limited to charging its actual and reasonable expenses of reproduction rather than the maximum statutory rate.

The majority qualified its finding by holding that the statutory pricing schedule does not apply to non-paper copies of records such as those produced by electronic means or on CD–ROM. In the court's view, until the General Assembly addresses that issue, medical records reproducers are limited to charging their estimated actual and reasonable copying expenses for producing non-paper copies. *Id.* at 1281. The court noted that *Liss* did not address, and the MRA did not contemplate, the reduced and diminishing costs of reproducing medical records in an electronic format and copies reproduced on CD–ROM or other electronic media. Nonetheless, adverting to the third issue raised by MRO, the court concluded that appellants' claim that they were overcharged for non-paper records was barred by the voluntary payment doctrine and the prior approval provision of Section 6152(a)(2)(i). The court reasoned:

> MRO's invoice clearly stated that records of more than 100 pages would be reproduced on CD–ROM.... [Appellants] admit that they received the invoice and paid for the CD–ROM without protest.... As the Court in *Liss* explained, the reproduction of medical records is a matter of contract, and "the MRA rates embody the public policy of the Commonwealth regarding the amounts to be charged by the industry for copying medical records.... The parties are free to negotiate other terms." *Liss,* [603 Pa.] at 211 n. 6, 983 A.2d at 659 n. 6. Therefore, there was no violation of the

Act with respect to the rate charged for the reproduction of records onto CD–ROM.

*Id.* at 1281.[6]

Senior Judge Robert Colville dissented. The dissent first noted that the only issue decided and certified by the trial court for interlocutory appeal was the statutory construction question of whether the MRA limits MRO to charging its actual and reasonable expenses of reproduction, subject to a cap. The dissent stressed that other issues raised in preliminary objections, including the voluntary payment defense and a tax question, were not decided by the trial court, and remained pending below. Thus, the dissent would not have reached additional issues raised by MRO that were not certified and accepted for appeal. The panel majority did not respond to the dissent's articulation of the proper scope of the permissive interlocutory appeal.

Turning to the merits, the dissent began by noting that neither *Liss* nor any other appellate decision had addressed or resolved the certified question, and thus it was one of first impression. Tracking the trial court's analysis, the dissent opined that the plain language of the MRA supported the trial court's determination:

Subsection 6155 of the MRA, which governs the manner in which MRO was to determine its charges, states in relevant part, "A health care provider or facility shall not charge a patient or his designee, including his attorney, a fee in excess of the amounts set forth in section 6152(a)(2)(i) (relating to subpoena of records)." 42 Pa.C.S.A. § 6155(b). Pursuant to the clear and unambiguous language employed in Subsection 6152(a)(2)(i) of the MRA, designated agents of health care providers, such as MRO, "shall be entitled to receive payment of **such expenses** before producing the charts or records." 42 Pa.C.S.A. § 6152(a)(2)(i) (emphasis added).

---

**6.** The panel also addressed two other issues not pertinent to this appeal—MRO's claim that the MRA applies only to health care providers and not to independent for-profit companies, and the question of whether MRO was permitted to charge sales tax.

The only reference to "expenses" in Section 6152 that precedes Subsection 6152(a)(2)(i)'s "such expenses" terminology can be found in Subsection 6152(a), wherein the General Assembly specifically references "estimated actual and reasonable expenses." 42 Pa.C.S.A. § 6152(a) ("[I]t shall be deemed a sufficient response to the subpoena if the health care provider or health care facility notifies the attorney for the party causing service of the subpoena … of the **estimated actual and reasonable expenses** of reproducing the charts or records.") (emphasis added).

Furthermore, after mandating that entities such as MRO receive payment of "such expenses," Subsection 6152(a)(2)(i) provides,

> **The payment shall not exceed** $15 for searching for and retrieving the records, $1 per page for paper copies for the first 20 pages, 75¢ per page for pages 21 through 60 and 25¢ per page for pages 61 and thereafter; $1.50 per page for copies from microfilm; plus the actual cost of postage, shipping or delivery.

42 Pa.C.S.A. § 6152(a)(2)(i) (emphasis added). In my view, by stating that "the payment shall not exceed" the various prices listed, the plain language of Subsection 6152(a)(2)(i) sets a cap on the amounts entities such as MRO can charge with respect to their expenses; the subsection does not set a default rate that such entities may or should charge.

27 A.3d at 1284 (Colville, J., dissenting).

## - III -

Appellants sought review in this Court, which was granted to consider the following two questions:

(1) Does the Medical Records Act, 42 Pa.C.S. § 6152(a)(1) and (a)(2)(i), require medical records reproducers to disclose their estimated actual and reasonable expenses of reproducing the charts or records, and to limit their copying charges to these amounts or the statutory ceiling rates, whichever is less?

(2) If so, where a medical records reproducer failed to disclose and charge its estimated actual and reasonable expenses and instead charges the MRA's ceiling rates, do the "voluntary payment" and "prior approval" defenses bar the records requestor from bringing a subsequent breach of contract claim to recoup the unlawful over-payment?

*Wayne M. Chiurazzi Law, Inc. v. MRO Corp.*, 614 Pa. 572, 39 A.3d 267 (2012).

 The first question involves statutory construction, while the second relates to legal defenses. As both issues involve pure questions of law, our scope of review is plenary, and our standard of review is *de novo*. *Commonwealth v. Janssen Pharmaceutica, Inc.*, 607 Pa. 406, 8 A.3d 267, 271 (2010).

## A.

Respecting the statutory construction issue, appellants' primary argument tracks that of the trial court and the Superior Court dissent. Thus, appellants pose that the plain language of the MRA imposes two duties upon records reproducers. The first duty, in Section 6152(a)(1), is to disclose the estimated actual and reasonable expenses of reproducing the medical records to the requestor. The second duty, imposed by Section 6152(a)(2)(i), is to limit the charges to the estimated actual and reasonable expenses or the statutory pricing schedule limit, whichever is less. Section 6152(a)(2)(i) also entitles the records reproducer to receive payment of the expenses before the charts or records are produced. According to appellants, when the two subsections are read together, the Act clearly contemplates that records reproducers are entitled to receive payment of their estimated actual and reasonable expenses of reproducing records prior to handing over the records, but this advance payment may not exceed the Act's statutory maximum amounts for search, retrieval, reproduction and delivery.

Appellants contend that the Superior Court majority misinterpreted the two subsections as allowing records reproducers

to refrain from notifying requestors of the estimated actual and reasonable expenses in advance of copying the records and then to charge the statutory pricing schedule maximum at all times. Appellants cite the panel majority's statement, unsupported by authority, that: "the calculation of estimated actual and reasonable expenses for paper copies is not required by the statute." Brief of Appellants, 18 (quoting *Wayne M. Chiurazzi Law Inc.*, 27 A.3d at 1274). Appellants argue that the majority's statement is contradicted by the plain language of Section 6152(a)(1) as well as *Liss*, 983 A.2d at 658, which stated that a records reproducer must provide the requestor with an estimate of the actual and reasonable expenses of reproduction. Appellants also challenge the majority's conclusion that the "such expenses" language in Section 6152(a)(2)(i) refers only to an estimate, which led the majority to conclude that the pricing schedule rates are "safe harbor" rates. Appellants argue that this reading cannot be squared with the plain language of the statute because it renders Section 6152(a)(1)'s requirement that the reproducer notify the requestor of estimated actual and reasonable expenses a nullity, a reading which violates the presumption that the Legislature does not intend statutory surplusage, as well as the requirement that statutes be read *in pari materia.*

Based upon their plain language interpretation of the MRA, appellants postulate that the Act provides certain conditions under which statutory maximum rates may be invoked: (1) the records reproducer must disclose to the requestor the estimated actual and reasonable expenses of reproducing the requested records (Section 6152(a)(1)); (2) those estimated expenses must be charged and collected by the records reproducer (Section 6152(a)(2)(i)); and (3) only if the estimated expenses equal or exceed the statutory pricing schedule maximum may the reproducer charge the maximum rates (Section 6152(a)(2)(i)). Appellants claim that the majority's contrary interpretation ignores the governing statutory language.

Appellants also argue that the majority misunderstood *Liss.* Appellants explain that the *Liss* plaintiffs never claimed that the defendant records reproducer was limited to charging the

lesser of its estimated actual and reasonable expenses or the statutory maximum rate. Instead, the dispute in *Liss* arose from the records producer charging the plaintiffs the MRA's maximum microfilm rate for records produced not from microfilm but from electronic originals. The issue before the *Liss* Court was which of two distinct rates identified in the second sentence of Section 6152(a)(2)(i) applied, the paper rate or the higher microfilm rate. Thus, appellants contend, the *Liss* Court's use of the term "rate" has to be read against the dispute as presented in its factual and contested legal context; the majority below was mistaken to take the language out of context and construe the case as if it had resolved the different issue presented here. Appellants also assert that reading *Liss* as the panel majority did suggests that the *Liss* Court intended to alter the plain terms of the MRA without any analysis of the statutory language requiring a records reproducer to notify the requestor of its "estimated actual and reasonable expenses" incurred in "reproducing the charts or records," as well as the language providing for the payment of "such expenses."

Alternatively, appellants argue that, assuming that the statute is ambiguous, the history of the MRA shows that it was intended to ensure that patients could obtain copies of their medical records on a "cost basis," and that the Act correspondingly was not "intended" to provide medical records producers ... with "[a] profit stream derived from the pockets of Pennsylvania patients desiring access to their own medical records." Brief of Appellants, 29–30. Appellants assert that in 1977, years before the original enactment of the MRA, the Pennsylvania Department of Health adopted regulations that deemed hospital medical records to be the property of the hospital, while also recognizing a right of patients to access their own records. The regulations established that a patient or his designee could be charged for reproduction costs, but required that "the charges shall be reasonably related to the cost of making the copy." *Id.*, citing 28 Pa.Code § 115.29. From this regulatory regime, appellants argue that, when the MRA was enacted, it was established that hospitals were not

permitted to profit from their ownership of medical records by padding charges for patient-requested copies.

Appellants then read the 1986 MRA amendments as confirming "cost-basis patient access," embodied in Section 6152(a)'s reference to "the estimated actual and reasonable expenses of reproducing the charts or records." Appellants note that the original enactment spoke only of "health care facilities" in Section 6152(a) and not health care providers or the designated agents of facilities or providers; the Act did not contain statutory caps on the amounts charged for reproducing copies; and Section 6155(b) spoke only of the patient's right of access, without providing a means of access.

Appellants next construe the 1998 MRA amendments as "strengthening and broadening" an actual cost-basis approach, since the amendments: (1) broadened Section 6152(a) to embrace subpoenas served upon health care providers; (2) altered Section 6155(b)'s statement of the right to records generally by adding language that the patient's designee also has a right to access, access does not require a subpoena, and "[a] health care provider or facility shall not charge a patient or his designee, including his attorney, a fee in excess of the amounts set forth in Section 6152(a)(2)(i) (relating to subpoena of records)"; and (3) added a completely new Section 6152(a)(2)(i), which provided statutory maximum rates and caps for reproductions.

Appellants say that it is significant that these amendments did not remove the cost-basis limitation they discern in Section 6152(a)(1)'s requirement to provide "estimated actual and reasonable expenses" of reproducing records. Appellants assert that the first sentence of new Section 6152(a)(2)(i) reinforces a cost-based approach because it states: "Except as provided in subparagraph (ii), the health care provider or facility or a designated agent shall be entitled to receive payment of such expenses before producing the charts or records." Tracking the trial court's view, appellants assert that the new "such expenses" language has to refer back to the "estimated actual and reasonable expenses" outlined in Section 6152(a)(1); that the term has no meaning otherwise; and indeed, the **only**

prior reference to "expenses" in the MRA is in Section 6152(a)(1). Appellants then stress that the second sentence of Section 6152(a)(2)(i), before setting forth the pricing schedule's rate caps, begins by stating that "The payment shall not exceed" the rates then set forth. Appellants argue that this formulation cannot support the notion that the General Assembly intended to establish a uniform "safe harbor" rate the record reproducer can charge in all cases. If that result had been intended, appellants note that, "The Legislature could have originally avoided in 1986, or stricken in 1998, any mention in the MRA of charges being limited to 'the estimated actual and reasonable expenses incurred' in the reproduction of medical records; of records providers being entitled to receive payment of 'such expenses'; or of provider charges for actual and reasonable expenses 'not to exceed' certain amounts.... [T]he Pennsylvania Legislature could have simply stated in the MRA the specific amounts that records providers are permitted to charge for reproduced records, period." Brief of Appellants, 38. Finally, appellants contend that their reading of the statute and its history and purpose comports with the public policy behind the MRA which, they claim, is to ensure that patients have easy, affordable access to their medical records, based upon a transparent disclosure of actual costs.

The Pennsylvania Association for Justice ("PAJ") has filed an *amicus curiae* brief in support of appellants. PAJ argues that important policy considerations support appellants' interpretation of the MRA. PAJ notes that, while hospitals may own medical records, no one has a greater stake in those records than the patient and the actual content of the records belongs to the individual patient. PAJ further submits that the "Patient's Bill of Rights" adopted by the Pennsylvania Department of Health makes clear that hospitals must provide patients with access to information contained in their medical records. *See* 28 Pa.Code § 103.22. In PAJ's view, this right is illusory if obstacles, including unreasonable economic hurdles, impede access. Noting that changes in the management of health information occasioned by innovations in technology

have drastically reduced the costs of responding to record requests, PAJ argues that restricting charges to actual and reasonable expenses is appropriate.

MRO responds that the MRA does not limit medical records reproducers to charging their actual expenses and, had that been the intention of the General Assembly, the Act would simply state that the charge for record copies cannot exceed the cost of reproduction. In MRO's view, the MRA created a detailed uniform pricing schedule and mandated that prices comply with the schedule, and appellants seek to supplant the schedule with a requirement that charges cannot exceed the actual cost of reproduction, which would "require a fact-bound inquiry each time records are produced and will vary depending on the number of records at issue and their location, storage medium (paper, microfilm, or whatever), production requirements, and other factors—a recipe for disputes and litigation." Brief for Appellee, 12.

MRO does not dispute that the MRA requires the records reproducer to disclose to the requestor "the estimated actual and reasonable expenses" of reproduction. But, MRO argues that the "expenses" so disclosed do not represent actual costs of reproduction; rather, MRO argues that "expenses" refers to the cost to the party making the request, and that expense is determined by the pricing schedule. In MRO's view, the pricing schedule establishes the "expense" to be estimated and then passed on to the requestor.

MRO points to what it says are "contextual elements" to support its reading. Thus, MRO cites the last sentence in Section 6152(a)(2)(i), which provides for annual adjustments to the pricing schedule based on the consumer price index: "The amounts which may be charged shall be adjusted annually beginning on January 1, 2000, by the Secretary of Health of the Commonwealth based on the most recent changes in the consumer price index reported annually by the Bureau of Labor Statistics of the United States Department of Labor." MRO deems it significant that, in mandating the adjustments, the statute refers to the pricing schedule as "amounts which may be charged." MRO also argues that Section 6152(a)(2)(i)

uses the terms "expenses" and "charges" interchangeably, which MRO interprets as conveying a legislative intent that "expenses" (as used throughout the MRA) means prices authorized to be charged for the records, not out-of-pocket costs actually incurred in reproducing records in a given case. MRO adds that, if the General Assembly had intended to limit chargeable expenses to actual costs, it could have used precise language as it did in Section 6152(a)(2)(i) when discussing what a records reproducer could charge for delivery, i.e., "the actual cost of postage, shipping or delivery."

MRO further cites provisions in the MRA limiting the costs that can be charged for reproducing records to be used to seek Social Security or similar benefits (Section 6152.1(a)(1)) and requests by district attorneys (Section 6152(a)(2)(ii)). MRO argues that these provisions were included to reduce costs in those instances, but the provisions still do not limit records reproducers to charging their out-of-pocket costs.[7] Finally, MRO contends that Section 6152(a)(1) does not discuss costs at all; instead, the Act simply requires notification of "estimated actual and reasonable expenses" of reproduction. If the MRA had been intended to restrict records reproducers to out-of-pocket costs of reproduction, MRO concludes, the Legislature was aware of how to accomplish such a limitation, but it did not do so.

MRO also renews its claim, rejected by both courts below, that Section 6152 is inapposite because it addresses subpoenas for records, while the records requests here were attorneys' requests for clients' medical records from hospitals. Those

7. Section 6152.1(a)(1) provides: "[A] health care provider or facility shall not charge more than a flat fee of $19 for the expense of reproducing medical charts or records, plus the actual cost of postage, shipping or delivery, if the charts or records are requested for the purpose of supporting a claim or appeal under any provision of the Social Security Act (49 Stat. 620, 42 U.S.C. § 301 et seq.) or any Federal or State financial needs-based benefit program." Section 6152(a)(2)(ii) states: "Payment to a health care provider or facility for searching for, retrieving and reproducing medical charts or records requested by a district attorney shall be $20.62, search and retrieval fee, plus the actual cost of postage, shipping or delivery as described in subparagraph (i), as adjusted by the Secretary of Health of the Commonwealth, unless otherwise agreed to by the district attorney."

requests are governed by Section 6155(b) which, according to MRO, limits the costs to the pricing schedule. Because Section 6155(b) itself makes no reference to estimated actual or reasonable expenses, but instead speaks of limiting the "fee" for copying to the "amounts set forth in section 6152(a)(2)(i)," MRO argues, this reference is only to the pricing schedule. This is so, MRO insists, because the only "amounts" set forth in Section 6152(a)(2)(i) are the "amounts which may be charged"—the pricing schedule. According to MRO, out-of-pocket costs play no role in pricing under the Act, especially where subpoenas are not at issue.

MRO also disputes appellants' statutory construction argument, claiming that the legislative history and other extrinsic aids confirm its own reading. MRO proposes that: the original Act contained the requirement that a records reproducer provide the "estimated actual and reasonable expenses" of securing records, but the Act did not specify what amounts could be charged; this gap led to class action lawsuits alleging that hospitals were charging too much; and the 1998 MRA amendment "resolved the issue" by adopting a "uniform" pricing schedule. MRO asserts that all floor statements concerning the 1998 legislation agreed that the amendments set a uniform pricing schedule, and no legislator suggested that its purpose was to limit charges to out-of-pocket expenses. Regardless of whether the amendments defined or displaced the concept of "expenses," MRO asserts, the intention was to adopt a uniform pricing schedule.

MRO then argues that appellants' "actual cost" reading has "no historical basis." MRO maintains that appellants' claim that the initial Act was intended to codify a 1977 hospital licensing regulation of the Health Department is unsupported by citation; the claim, even if true, is irrelevant since the 1998 legislation is at issue; the legislative history of the 1998 amendments includes an uncontradicted floor comment that no such regulations exist; and the Health Department has issued annual notices treating the pricing schedule as controlling. MRO adds that appellants' construction of the Act would threaten the financial viability of records reproducers like

MRO. MRO asserts that hospitals and other medical providers have outsourced this function to cut their own costs, a practice which benefits patients and their attorneys.

MRO also argues that appellants' actual cost construction creates a statutory framework that is not feasible and is impossible to administer. MRO notes that nothing in the MRA defines the term "actual and reasonable expenses," leaving companies to guess what they can charge and risk litigation whenever a requestor contends that the expense calculation should have proceeded differently. MRO notes the large number of variables affecting costs, such as the medium in which the records are stored and labor costs. In addition, records reproducers would be required to create sophisticated cost-accounting systems, so as to defend against accusations of over-charging, systems which themselves would increase "expenses." In MRO's view, the 1998 amendments were designed to put an end to such litigation by adopting a uniform pricing system. MRO concludes this portion of its argument by arguing that it is unreasonable to construe the Act as requiring a limitation to "actual expenses;" the legislative history points to a contrary intent; and appellants' contrary argument is unreasonable.

Finally, MRO argues that appellants' theory is at odds with this Court's decision in *Liss*. MRO interprets *Liss* as teaching that the Section 6152 pricing schedule, and not the estimated actual and reasonable expenses of record reproduction, controls pricing under the MRA. MRO contends that the records reproducer in *Liss* argued that the "estimated actual and reasonable expense" language, and not the pricing schedule, determined pricing under the Act, an argument the Court rejected when it found that the pricing schedule controls. MRO concludes that the panel majority below correctly held that *Liss* is controlling and dispositive, and under *Liss*, a records reproducer may always charge the rates set forth in the Act's pricing schedule.

The Hospital and Healthsystem Association of Pennsylvania ("HHAP") has filed an *amicus* brief in support of MRO. HHAP notes that while the controlling question of law here

arises in a case where the records provider was a for-profit medical records company, there are other pending cases involving hospitals that handle record requests on their own. HHAP argues that it is important to recognize the interests of hospitals serving as their own medical records providers.

On the merits, HHAP echoes MRO's argument that the 1998 amendments to the MRA were added precisely to address the problem of the lack of uniformity in the costs of copying medical records. HHAP states that the provisions were adopted after careful legislative consideration, a public process in which HHAP participated. HHAP contends that the panel majority's holding that the Act sets forth "safe harbor" rates for estimated actual and reasonable expenses is a correct interpretation that is consistent with the legislative intent to promote uniformity by establishing a "reasonable" charge. Like MRO, HHAP highlights legislative floor comments expressing concerns over nonstandard and excessive charges for records, and the absence of any discussion or indication of support for an "actual expenses" restriction. HHAP maintains that the legislative history confirms that the object of the legislation was to create fixed statutory rates while protecting the financial viability of medical records reproduction companies.[8]

In HHAP's view, appellants seek to revisit an issue settled by the 1998 MRA amendments; if appellants succeed, the cost uniformity established in 1998 will be "wiped away;" and in practice, the price of each records request will have to be separately estimated, taking into account the variable factors MRO notes, which imposes an unwieldy, inefficient and labor-intensive burden on record reproducers. HHAP notes that the burden is especially heavy with hospitals, whose primary mission is to deliver quality health service as affordably as possible. Obliging hospitals to devote the time and resources

8. In support of its last point, HHAP cites, *inter alia*, the floor comments of Representative Cohen: "This legislation sets forth a uniform schedule to satisfy the interests of patients, doctors, hospitals, and medical record service companies that provide this valuable service." HHAP Brief, 7, quoting Pa. Legislative Journal–House (January 20, 1998), at 24.

required to assess the actual cost of each request, rather than allowing legislative safe harbor rates to obtain, impedes this mission. Finally, HHAP notes that the General Assembly has already determined in the pricing schedules what is a reasonable copying charge, and that the legislation provides for annual rate adjustments, tied to the consumer price index; "requiring hospitals to undertake the immense task of estimating the cost of each request is even more unreasonable when considering these multiple levels of oversight for determining copying rates." HHAP Brief, 10.[9]

In their Reply Brief, appellants take issue with MRO's argument that Section 6152(a)(1)'s obligation that records producers provide "estimated actual and reasonable expenses" merely refers to what it will ultimately cost the requestor, and does not refer to the producer's actual expenses. Appellants note that MRO's construction ignores the complete phrase in the statute, which speaks of " . . . expenses of reproducing the charts or records." Appellants argue that the reference to reproducing the records makes clear that the expenses adverted to are the costs resulting from actual reproduction of the records—*i.e.*, MRO's actual reproduction costs. Appellants rebut MRO's argument that the use of the word "estimated" proves a legislative focus on the **requestor's** cost by arguing that the General Assembly merely recognized that it is not feasible to expect records reproducers to know in advance the actual cost of reproducing the records.

In a further textual rebuttal, appellants argue that Section 6152(a)(2)(i) makes deliberate and artful use of mandatory and permissive language. Thus, the first sentence says the records reproducer "shall be entitled to receive payment of such expenses before producing the charts or records;" and the second sentence likewise uses mandatory language in stating that the payment of expenses "shall not exceed" the listed

9. A second *amicus* brief in support of MRO was filed by Healthport Technologies, LLC. Healthport, like MRO, is a private medical records reproduction company, and is a defendant in a virtually identical case in Allegheny County that has been placed on hold pending this appeal. Healthport largely echoes the statutory interpretation and policy arguments set forth by MRO and HHAP.

amounts which, appellants argue, furthers the "reasonable" expense limitation in the statute and establishes an "outer limit" for expenses. In contrast, appellants stress that the fourth sentence of the provision, addressing annual adjustments to the pricing schedule, uses permissive language, as it speaks of amounts that "may be charged." Appellants maintain that the use of this permissive language confirms that the Legislature did not intend the pricing schedule to apply at all times, uniformly.

Responding to MRO's legislative history argument, appellants again stress that the MRA's original "estimated actual and reasonable costs of reproducing the charts or records" language was not altered, revised or removed by the 1998 amendments, but instead the General Assembly merely added "caps" or "upper limits" to what records producers could charge, which addressed the concern with inflated costs. Appellants note that the Legislature easily could have, but did not, adopt a "flat fee" approach to these charges, as it did in Section 6152.1 of the Act, which addresses charges for records requests relating to claims under the Social Security Act. Appellants also note that the legislative floor debates contain no reference to a single flat fee schedule, but rather are consistent with the understanding that a cap on fees was being proposed. With respect to the claim that appellants' construction of the Act would threaten the financial viability of for-profit records producers like MRO, appellants note that, at this stage of the proceedings, what MRO charges and collects from its clients is a key factual question yet to be examined via discovery, much less resolved by a factfinder. Further, in appellants' view, this concern is a red herring because, in its contracts with its clients, MRO can seek to obtain medical records-related income streams, and profits, from sources other than Pennsylvania's patients.

Finally, appellants also dispute MRO's argument that an "actual expenses" standard is not feasible, arguing that this point presents a simple factual issue. Appellants further argue that the components of actual expenses are not difficult to ascertain, and would comprise costs relating to search and

retrieval (including labor costs), copying or reproduction itself, and postage, shipping and handling.

 The appellate briefing has been thorough, complex and well done. This Court's approach to questions of statutory construction is well-settled:

> "The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions." 1 Pa.C.S. § 1921(a); *Commonwealth v. McCoy*, 599 Pa. 599, 962 A.2d 1160, 1167–68 (2009). A statute's plain language generally provides the best indication of legislative intent. *McCoy*, 962 A.2d at 1166; *Ephrata Area Sch. Dist. v. County of Lancaster*, 595 Pa. 111, 938 A.2d 264, 271 (2007); *Pennsylvania Fin. Responsibility Assigned Claims Plan v. English*, 541 Pa. 424, 664 A.2d 84, 87 (1995) ("Where the words of a statute are clear and free from ambiguity the legislative intent is to be gleaned from those very words."). Only where the words of a statute are not explicit will we resort to other considerations to discern legislative intent. *Ephrata Area Sch. Dist., supra; see also* 1 Pa.C.S. § 1921(c); *In re Canvass of Absentee Ballots of Nov. 4, 2003 Gen. Election*, 577 Pa. 231, 843 A.2d 1223, 1230 (2004). Moreover, in this analysis, "[w]e are not permitted to ignore the language of a statute, nor may we deem any language to be superfluous." *McCoy*, 962 A.2d at 1168. Governing presumptions are that the General Assembly intended the entire statute at issue to be effective and certain, and that the General Assembly does not intend an absurd result or one that is impossible of execution. *See* 1 Pa.C.S. § 1922(1)-(2).

*Board of Revision of Taxes, City of Philadelphia v. City of Philadelphia*, 607 Pa. 104, 4 A.3d 610, 622 (2010).

Preliminarily, we agree with appellants and the trial court, and we necessarily disagree with the Superior Court panel majority below, that the question before us has not already been answered in the *Liss* case. The point need not detain us long. "We have emphasized many times . . . that a decision is

to be read against its facts and will not be applied uncritically to subjects which were not directly before the Court." *Mitchell Partners, L.P. v. Irex Corp.*, 617 Pa. 423, 53 A.3d 39, 46 (2012), citing *Six L's Packing Co. v. WCAB (Williamson )*, 615 Pa. 615, 44 A.3d 1148, 1158 & n. 11 (2012). Having set forth at some length what was at issue and actually decided in *Liss*, the parties' competing positions respecting the decision, and the competing views articulated by the courts below, it is enough to note that, when the Court in *Liss* spoke to the proper "rate" to be charged, it did not purport to reject a claim that a records reproducer is required to charge the lesser of its estimated actual and reasonable expenses or the statutory pricing schedule rate. Nor did the *Liss* Court purport to hold that the Act established a safe harbor rate that could be charged in all cases. Instead, the issue before the *Liss* Court was which of two distinct rates, identified in the second sentence of Section 6152(a)(2)(i), applied—the paper rate or the higher microfilm rate. The panel majority below erred in construing the case as if it resolved the different issue presented here; thus, the primary ground for the Superior Court's decision is not sustainable.

■ Turning to this question of statutory construction as a first impression matter, MRO's construction of the Act is intricate and ingenious in some respects, and it articulates what may be a rational and legitimate approach to the general question of how best and fairly to regulate the expenses of securing medical records. However, we simply do not believe that the structure and plain language of the provisions of the Act at issue here support MRO's construction. To be sure, as Judge Wettick recognized and MRO and its *amici* explain, it is no doubt within the power of the General Assembly to establish a statutory rate for copies of medical records (and perhaps such an intention is reflected in the General Assembly's decision to amend the statute in 2012 to delete the clause concerning "estimated actual and reasonable expenses"—but that question is not before us). But, as appellants' counter-presentation makes apparent, there is likewise something to be said for a cost-based-with-a-cap system. The question of

which approach to employ is a matter for the General Assembly in the first instance. Our task is to determine which approach is conveyed by the language in the Act before us.

In our view, the plain and unambiguous language of the Act—read in a way to avoid surplusage and to give effect to all provisions—fully supports the construction employed by the trial judge and the Superior Court dissent, and elaborated upon by appellants here. Having already summarized the competing views at length, we merely stress the following factors, evident in the language and structure of the MRA, that convince us that this legislative scheme establishes that the expenses chargeable for medical records are the reproducer's actual and reasonable expenses, but subject to a statutory cap. First, the language of Section 6152(a)(1) speaks to a records reproducer providing "the estimated actual and reasonable expenses of reproducing the charts or records" requested. We agree with appellants that the natural reading of this Section is not that it refers to what it will cost the requestor, with that cost, or charge, determined by the reproducer employing a uniform statutory rate—which is MRO's reading—but rather to the actual expenses involved in reproducing the records involved. As Judge Wettick noted, MRO's construction would instead substitute the word "charges" for the formulation actually employed, which is expenses in reproduction, and which is a different concept.

Second, the language of Section 6152(a)(2)(i) reaffirms the focus on actual and reasonable expenses of reproduction. The provision begins by stating that the reproducer shall be entitled to "receive payment of such expenses" before providing the records. This is not a stand-alone provision, but a new **subsection** to Section 6152(a), and the reference to "such expenses" is obviously a reference back to the "estimated actual and reasonable expenses" described in (a)(1)—the only other mention of expenses, as it happens. The statutory pricing schedule only then follows, but introduced by the important qualifier that the payment shall not **exceed** the amounts set forth as the pricing schedule. This language and structure plainly suggests that the pricing schedule serves as

a cap on the actual and reasonable expenses of reproduction. Such, anyway, is the natural and logical reading of the provisions.

Third, we agree with both courts below that the fact that the records here were requested under Section 6155, governing rights of patients, rather than by subpoena under Section 6152(a), does not change the analysis. Section 6155 explicitly states that the records reproducer shall not charge "a fee in excess of the amounts set forth in section 6152(a)(2)(i) (relating to subpoena of records)." This cross-reference to, and effective incorporation of, Section 6152(a)(2)(i) is simply not limited to the pricing schedule set forth in the second sentence. Moreover, use of the word "amounts" suggests awareness that the prior section approved actual and reasonable expenses, but subject to a statutory rate cap.

Fourth, we do not believe that the fact that Section 6152(a)(1) speaks of providing the "estimated" actual and reasonable expenses of reproducing the records, rather than an exact figure, supports the notion that a uniform rate was intended. This reads too much into the statute. As appellants note, the use of the word "estimated" merely suggests a recognition that the records reproducer may not know in advance the actual cost of reproducing the records.

The other points debated by the parties are equivocal at best. For example, it is true, as MRO notes, that the statute does not simply declare that the charge for record copies cannot exceed the cost of reproduction. But, it is also true, as appellants argue, that the statute just as easily could have simply set forth "the specific amounts that records providers are permitted to charge for reproduced records, period," if that had been the legislative intention. The fact remains that the legislation includes references to estimated actual and reasonable expenses of reproduction, records providers being entitled to receive payment of "such expenses," and a limitation that charges cannot "exceed" the pricing schedule.

Similarly, MRO's argument that the interpretation of Judge Wettick (and appellants) supposedly threatens the financial

viability of for-profit records producers is not a reason to look behind the plain language of the statute. Moreover, to the extent the point is relevant, appellants offer the plausible rebuttal that the question of what MRO charges and collects from its clients is a factual question not yet resolved and, in any event, it is not self-evident that all profit to be made in providing this service to hospitals and other facilities must necessarily be passed on to Pennsylvania's patients requesting their records.

Nor are we persuaded that the plain language reading of the statute is defeated because the statute does not specifically define what is meant by actual and reasonable expenses. As Judge Wettick succinctly explained, "*actual expenses* means expenses existing in fact, and *reasonable expenses* means that the costs are not padded." Tr. Ct. Op. at 6 (emphasis in original). More importantly, as appellants note, this too would appear to be a factual matter which should admit of a reasonable solution below.[10]

Finally, respecting the parties' competing views of the legislative history and other matters of statutory construction, having determined that the issue is resolvable under the plain language of the statute, we need not engage in that pursuit. We note only that the competing presentations addressing extra-textual matters appear plausible on their face, which would suggest prudence before going behind the language actually at issue.

Accordingly, for the reasons set forth above, on this question, we reverse the Superior Court and reinstate the determination of the trial judge.

**10.** Judge Wettick noted that, if MRO's construction of the Act were rejected, "several (possibly complicated) factual and legal issues" would require consideration, "including what are actual and reasonable expenses." Tr. Ct. Op. at 3. The question of whether actual and reasonable expenses may include a profit margin when a third-party records reproducer acts as the agent for a health care provider or facility is a matter that we view to be available for consideration upon remand, assuming that the issues discussed in Part III(B), *infra*, are not deemed dispositive on remand.

## B.

■ The second question accepted for review concerns a presumably independent ground of decision supporting the panel's determination that the trial court should be reversed and the complaint dismissed, *i.e.*, the panel's holding that the voluntary payment and prior approval defenses bar appellants' complaint. The preliminary difficulty we have, however, is that the Superior Court should never have addressed these issues. This was not an appeal as of right, but an interlocutory appeal by permission, certified by the trial court, and ultimately approved for review by the Superior Court. The trial court certified the single issue resolved by its order: whether the MRA prohibited a records reproducer such as MRO from charging a records requestor in excess of its own actual and reasonable expenses in reproduction. The court did not certify, and the Superior Court did not accept, additional issues respecting defenses that the trial court had yet to pass upon. Moreover, the defenses were deliberately not passed upon by the trial judge in his efficient and methodical approach to this class action litigation. The opinion by the trial judge specifically noted the existence of the defenses, which the court appreciated could be complicated; and the court rightly noted that those complicated issues would only have to be reached if MRO's construction of the statute proved to be correct—which is precisely why the judge certified the statutory construction issue for appeal.

> [A]s a general rule, appellate courts have jurisdiction only over final orders. *See* 42 Pa.C.S. § 742 (providing appellate jurisdiction to Superior Court over "final orders"); *id.*, § 762 (same for Commonwealth Court); *Commonwealth v. Wells*, 553 Pa. 424, 719 A.2d 729 (1998). That general rule, however, is subject to exceptions which give appellate courts jurisdiction to review interlocutory orders under limited circumstances. *See* 42 Pa.C.S. § 702 (governing appellate jurisdiction over interlocutory orders); *see also* Pa.R.A.P. 311 (interlocutory appeals as of right); Pa.R.A.P. 312 (interlocutory appeals by permission).

*Commonwealth v. White,* 589 Pa. 642, 910 A.2d 648, 653 (2006). Once an interlocutory order is certified and accepted, it neither confers a right, nor extends an invitation, to a party to add other interlocutory issues, not passed upon below, to the appeal. The issue is not just a question of the proper limitations upon an intermediate appellate court's jurisdiction. Proceeding to address issues neither decided below nor certified and accepted for review also causes the appellate court to proceed without the benefit of the trial judge's views—which is what happened here.

Although it appears that appellants did not object to MRO's addition of non-certified issues to its appellate brief below, and the issues are briefed again here on the merits, we are disinclined to reach them under these circumstances. No doubt many parties would prefer to have interlocutory issues resolved ahead of time, but the parties' strategic litigation decisions are not what frames the proper jurisdiction of the appellate courts. Notably, here, the panel majority never explained why it proceeded to address the non-certified issues even in the face of Judge Colville's dissent properly stressing that the issues were not before the court. In our view, having affirmed the trial court's decision of the statutory construction question, the proper disposition is to permit the trial court to pass upon the additional claims in the first instance. Accordingly, the Superior Court's decision concerning the non-certified issues is vacated, and those issues are left to the trial court to resolve on remand.

## - IV -

The order and judgment of the Superior Court is reversed and the matter is remanded to the trial court for proceedings consistent with this Opinion. Jurisdiction is relinquished.

Former Justice ORIE MELVIN did not participate in the consideration or decision of this case.

Justices EAKIN, BAER and TODD join the opinion.

Justice SAYLOR files a concurring and dissenting opinion in which Justice McCAFFERY joins.

Justice SAYLOR, concurring and dissenting.

I join Part III(B) of the majority opinion, holding that the Superior Court exceeded the scope of the interlocutory appeal and remanding for the trial court to address the defenses raised by MRO. I also agree with other portions of the majority's decision, including its determinations that: *Liss & Marion, P.C. v. Recordex Acquisition Corp.*, 603 Pa. 198, 983 A.2d 652 (2009), is not dispositive of this case; the version of the Medical Records Act under review (the "MRA") capped expenses, rather than providing a uniform statutory rate; and, the manner of request, whether by subpoena or otherwise, did not alter the pricing scheme. However, I respectfully dissent relative to the majority's interpretation and application of the "estimated actual and reasonable expenses" language of former Section 6152(a)(1) of the MRA. 42 Pa.C.S. § 6152(a)(1) (superseded).[1]

Initially, I am not convinced that the statutory language was unambiguous, since the parties offer reasonable and plausible alternative interpretations. *See Malt Beverages Distribs. Ass'n v. Pa. Liquor Control Bd.*, 601 Pa. 449, 463, 974 A.2d 1144, 1153 (2009) ("[W]e find that each party's interpretation of the statutory language is plausible and, therefore, the statute is ambiguous."). The majority clarifies some of the ambiguity by adopting the trial court's view that "*actual expenses* means expenses existing in fact, and *reasonable expenses* means that the costs are not padded." Majority Opinion at 337, 97 A.3d at 295 (quoting *Wayne M. Chiurazzi Law Inc. v. MRO Corp.*, No. GD 09–012911, *slip op.* at 6 (C.P.

1. As noted by the majority, *see* Majority Opinion at 308 & n. 2, 97 A.3d at 277 & n. 2, the operative language of Section 6152(a)(1) was deleted by the General Assembly, effective September 4, 2012. *See* Act of July 5, 2012, P.L. 1138, No. 139, § 1 (as amended, 42 Pa.C.S. § 6152(a)(1)).

Allegheny, June 17, 2010)) (emphasis in original). Nevertheless, as I see it, the statute as a whole did not easily lend itself to a plain language interpretation.

Additionally, I disagree with the majority's conclusion that third-party reproducers were limited to charging only their actual costs of reproduction. The majority states that "the language of Section 6152(a)(1) speaks to a *records reproducer* providing 'the estimated actual and reasonable expenses of reproducing the charts or records' requested." Majority Opinion at 335, 97 A.3d at 293 (quoting 42 Pa.C.S. § 6152(a)(1) (superseded)) (emphasis added). However, the limiting language of Section 6152(a)(1) did not broadly reference records reproducers; instead, it specified that the "health care provider[ ] or facility[ ]" shall notify the requester of the "estimated actual and reasonable expenses" of reproduction. 42 Pa.C.S. § 6152(a)(1) (superseded). In fact, the term "designated agent" (*i.e.*, a third-party reproducer such as MRO) did not appear in Section 6152(a)(1), but rather, only in the first sentence of Section 6152(a)(2)(i), which merely entitled the health care entity or agent to receive payment of "such expenses" prior to reproduction. 42 Pa.C.S. § 6152(a)(2)(i) (superseded) ("[T]he health care provider or facility or a *designated agent* shall be entitled to receive payment of such expenses before producing the charts or records." (emphasis added)). Although the majority determines, correctly in my view, that the phrase "such expenses" referenced the "expenses" of the prior section, that did not alter the statute's discrete limitation on the expenses of the health care entity.[2] Thus, reading these provisions together demonstrates that the health care facility was to notify the requester of the reasonable expenses that *it* incurred to have the records reproduced, whether the copies were made by the provider itself or a third party, subject to the statutory cap.

---

2. Section 6152(c) of the MRA also supported this emphasis on the health care entities' expenses, since it mandated that the health care provider or facility deliver the requested reproductions within thirty days of the "payment of *its* expenses." 42 Pa.C.S. § 6152(c) (emphasis added).

To further elaborate, given the MRA's focus on the health care entity's expenses, I favor reading this ambiguous statute as previously having imposed on a health care provider or facility a duty to charge a requester only its actual and reasonable expenses of reproducing the charts or records, subject to the statutory cap. Thus, if the facility or provider made the copies itself, it was limited to charging only the actual costs of reproduction, without profit or padding. On the other hand, if the reproduction was outsourced to a designated agent, it was the reproducer's charged rate, including its profit margin, which equated to the health care entity's expense for reproduction. However, the designated agent scenario was not without limitations, since the health care entity was still burdened with the responsibility to seek a reasonable charge when outsourcing the copying. The determination of whether a health care provider or facility has met this burden will necessarily entail a factual inquiry, which may include, *inter alia*, an examination of the relationship between the reproducer and the health care entities it serves, the designated agent's profitability, and the impact that the use of computers, electronic records, and the Internet has on the costs of obtaining and copying records. In this regard, considering the statutory text, its context, and history, I perceive no legislative intent to preclude a third-party reproducer from making a profit. *See, e.g.,* Pa. House Legislative Journal, Jan. 20, 1998, at 25 (remarks of Hon. Lita Cohen) ("This agreed-to language ... will lower the cost of litigation while adequately protecting the revenue base for the copying companies.").[3]

In sum, I do not believe that the MRA limited third-party records reproducers to recovery of only their actual costs of reproduction. Thus, I would reverse the Superior Court and remand for the trial court's examination as to the reasonableness of the expenses incurred by the health care providers and

---

**3.** In this regard, I differ with the majority's position that whether a third party's profit margin may be encompassed within "actual and reasonable expenses" is a "factual matter" that is "available for consideration upon remand." Majority Opinion at 337 & n. 10, 97 A.3d at 295 & n. 10. To the contrary, I view this as a question of statutory construction that should be answered based on the above analysis.

facilities.[4]

Justice McCAFFERY joins this concurring and dissenting opinion.

---

4. This assumes, of course, that the other issues discussed in Part III(B) of the majority opinion do not require dismissal of the complaint in the first instance. *See* Majority Opinion at 338–39, 97 A.3d at 295–96.