962 A.2d 1160

**COMMONWEALTH of Pennsylvania, Appellee**

v.

**James McCOY, Appellant.**

Supreme Court of Pennsylvania.

Argued April 14, 2008.

Decided Jan. 23, 2009.

Karl Baker, Esq., Marissa Boyers Bluestine, Esq., Defender Association of Philadelphia, for James McCoy.

Hugh J. Burns, Jr., Esq., Jonathan M. Levy, Esq., Philadelphia District Attorney's Office, for Commonwealth of Pennsylvania.

BEFORE: CASTILLE, C.J., and SAYLOR, EAKIN, BAER, TODD and McCAFFERY, JJ.

## OPINION

Chief Justice CASTILLE.

The question presented in this appeal is whether Section 2707.1 of the Crimes Code, 18 Pa.C.S. § 2707.1, entitled "Discharge of a firearm into an occupied structure," encompasses a situation where an individual discharges a firearm while inside an occupied structure, rather than firing into the structure from a location outside of the structure. For the following reasons, we hold that Section 2707.1 does not apply to such conduct, and we reverse appellant's conviction for discharge of a firearm into an occupied structure.

The undisputed facts that gave rise to this appeal are as follows. At about 7 p.m. on July 27, 2004, appellant James McCoy entered an Old Country Buffet restaurant located at 4640 Roosevelt Boulevard in Philadelphia. The restaurant was quite busy, with about 250 customers present. Appellant approached the manager, James Hargrove, and informed him that he had eaten at the restaurant earlier in the day and had become ill as a result. Mr. Hargrove, who did not recall seeing appellant that day, asked him a series of questions regarding what he ate and whether he had a receipt. While they were speaking, a large group of customers entered the restaurant and Mr. Hargrove went to his office to "attend to business for them." [1] Appellant followed Mr. Hargrove to his office, where Mr. Hargrove asked him to wait in a chair outside of the office while he took care of matters inside his office. Appellant initially waited, but after a short time he followed Mr. Hargrove into the office, reached into his pocket, and withdrew a handgun. Upon seeing the gun, Mr. Har-

---

[1]. The record does not reveal the nature of the business Mr. Hargrove intended to perform for this large group of customers or why Mr. Hargrove went to his office to attend to the group.

grove ran out of the office and into the kitchen area. Appellant pursued him into the dining area of the restaurant, fired his gun approximately five times in the direction of the kitchen, and then left the premises. Fortunately, no one was physically injured.

On March 16, 2005, following a non-jury trial, appellant was convicted of carrying a firearm without a license,[2] carrying a firearm on a public street,[3] possession of a firearm by a convicted felon,[4] possession of an instrument of crime,[5] simple assault,[6] recklessly endangering another person,[7] and discharge of a firearm into an occupied structure.[8] On April 27, 2005, appellant was sentenced to four to eight years' incarceration for possession of a firearm by a convicted felon, one to five years' incarceration for possessing an instrument of crime, and one to two years' incarceration for simple assault, with all sentences to be served consecutively. No further penalties were imposed for the convictions for carrying a firearm without a license, carrying a firearm on a public street, recklessly endangering another person, and discharging a firearm into an occupied structure.

Appellant appealed to the Superior Court, raising two issues. First, notwithstanding that no punishment was imposed for his conviction for discharging a firearm into an occupied structure, appellant argued that the conviction should be vacated because he fired his gun while already inside the structure. Second, he raised a claim concerning the Sentencing Guidelines, an issue not now before this Court.

In its Pa.R.A.P.1925(b) opinion, the trial court held that appellant violated Section 2707.1's prohibition against discharge of a firearm into an occupied structure by firing his

2.  18 Pa.C.S. § 6106(a).
3.  18 Pa.C.S. § 6108.
4.  18 Pa.C.S. § 6105.
5.  18 Pa.C.S. § 907.
6.  18 Pa.C.S. § 2701(a).
7.  18 Pa.C.S. § 2705.
8.  18 Pa.C.S. § 2707.1.

gun while he was within the Old Country Buffet. Section 2707.1(a) defines the offense as follows: "A person commits an offense if he knowingly, intentionally or recklessly discharges a firearm from any location into an occupied structure." The trial court acknowledged that applying the plain meaning of "into" would necessitate that the defendant be outside the structure in order to fire into it. However, the trial court also noted that the statutory language dictated that the shooter could be firing "from any location" into the occupied structure. The trial court determined that the language "from any location" modified the word "into," requiring a finding that the statute encompassed firing a weapon both into and from within the occupied structure. Thus, the trial court determined that appellant was appropriately found guilty because he fired his gun into the kitchen area of the restaurant, which satisfies the definition of an occupied structure under the statute.

The Superior Court affirmed in a published opinion. *Commonwealth v. McCoy*, 928 A.2d 306 (Pa.Super.2007). The court viewed appellant's claim that he could not be convicted of discharging a firearm into an occupied structure when he was inside the structure at the time as a challenge to the sufficiency of the evidence, noting that appellant argued that there was no evidence that he was outside of the structure at the time he fired his gun. Agreeing with appellant that the language of Section 2707.1 is unambiguous, the court focused on the meaning of the phrase "from any location," but failed to discuss the meaning of the word "into" or its effect on the statute's meaning. The Superior Court concluded that the plain language of the statute prohibited discharging a firearm "from any location;" therefore, the statute did not require that the defendant be outside the occupied structure when the gun was fired. In a footnote, the Superior Court opined that an individual could even commit an offense under Section 2707.1 by discharging a firearm from one room to another within an occupied structure. Thus, the Superior Court concluded that, because the General Assembly had included the words "from any location" in the statute, the "clear and **unambiguous**

wording of [Section] 2707.1 does not limit a defendant's location to outside of a structure when discharging a firearm." *McCoy*, 928 A.2d at 311. The Superior Court acknowledged that this was a case of first impression in the Commonwealth, but dismissed appellant's citations to authority from other jurisdictions as irrelevant because the cases were "factually distinguishable" from the case at bar. *Id.* at 310.

We granted allowance of appeal because the language of Section 2707.1 is arguably open to more than one interpretation, and the Superior Court's decision was the first instance of a court in Pennsylvania interpreting the meaning and application of the statute. Because a question of statutory interpretation is a pure question of law, our scope of review is plenary. *Tritt v. Cortes*, 578 Pa. 317, 851 A.2d 903, 905 (2004).

Appellant first points to the title of Section 2707.1, "Discharge of a firearm **into** an occupied structure" (emphasis added) and the statutory language outlawing the "discharge [of] a firearm from any location into an occupied structure," and argues that the language is clear and free from ambiguity. He contends that, in order for the lower courts' interpretation of the statute to be logical, additional language must be added or assumed: "from any location into, **or from within,** an occupied structure." This result, appellant argues, cannot stand because this Court has held that "a court may not achieve an acceptable construction of a penal statute by reading into the statute terms that broaden its scope," quoting *Commonwealth v. Scolieri*, 571 Pa. 658, 813 A.2d 672, 678 (2002). According to appellant, the Superior Court's determination that the words "from any location" do not limit a defendant's location to the outside of a structure when discharging a firearm creates an ambiguity in the statute where none previously existed. Further, the Superior Court's interpretation gives no weight to the statute's title or the requirement that the firearm be discharged "into" the structure. To the contrary, appellant claims, the language "from any location," when read in context with the statute's title, leads to the conclusion that the shooter must be outside the building when

he discharges his firearm in order for a conviction under this statute to lie.

Appellant thus argues that this case should be decided on the plain language of the statute, and that the word "into" clearly signifies that a defendant must necessarily be located outside of a structure in order to fire into it. He claims that if the Legislature had intended that a defendant could be convicted under this statute for firing a gun while inside a building, it would have included words to so indicate but declined to do so. Further, appellant contends that the lower courts' interpretation of the statute violates the rule of lenity, which requires that penal statutes are always to be construed strictly. 1 Pa.C.S. § 1928(b)(1) (penal statutes shall be strictly construed). While maintaining that the statute as written is clear and free from ambiguity, appellant asserts that the ambiguity created by the lower courts also justifies the invocation of the rule that "any ambiguity in a penal state should be interpreted in favor of the defendant." *Commonwealth v. Shiffler*, 583 Pa. 478, 879 A.2d 185, 189 (2005). Appellant asserts that the lower courts' interpretation violates this rule by construing the ambiguity in favor of the Commonwealth— that is, in favor of broadening the statute to criminalize additional activity without giving fair notice that such activity is encompassed by the statute.

Further, appellant notes that the legislative history of Section 2707.1 is limited; and he points to similar statutes from our sister states and case law interpreting them to support his assertion that the Legislature enacted Section 2707.1 specifically to address the phenomenon of "drive-by shootings." Appellant's Brief at 10 (citing *People v. Simpson*, 93 P.3d 551 (Colo.App.2003) (Colorado statute prohibiting firing "into any dwelling or any other building" was intended to punish random drive-by and walk-by shootings); *State v. Caldwell*, 21 Kan.App.2d 466, 901 P.2d 35 (1995) (purpose of similar Kansas statute is to ensure that drive-by shootings are graded as felonies)). Appellant argues that the Pennsylvania General Assembly had a similar purpose in enacting Section 2707.1, and that the addition of the phrase "from any location" was

only intended to ensure that the act of firing from a moving vehicle or from another building would not escape punishment.

Finally, appellant concludes that the statute's title, "Discharge of firearm into an occupied structure," supports his interpretation of the statute because it outlines the prohibited behavior. Appellant points out that "into," but not "from any location," is included in the statute's title.[9] Appellant argues that "into" is the statute's "triggering" word upon which an interpretation of the statute should rest. Appellant claims that, if the statute had been intended to criminalize discharging a weapon within, as well as into, an occupied structure, the Legislature would have either titled the statute "discharge of a firearm from any location," or included the words "into **or within**" in the statute's title. The absence of those words, appellant argues, indicates that "into" is the statute's controlling or key language, and that the proper scope of the statute is thus limited to the firing of a gun into a structure, rather than within it.

The Commonwealth responds that appellant's argument infers a requirement that a shooter be outside an occupied structure when discharging his firearm where no such requirement exists in the statute. The Commonwealth also believes that the language of Section 2707.1 is clear and unambiguous, but argues that appellant asks this Court to interpret the statute in a manner inconsistent with that plain language. The Commonwealth asserts that the plain and ordinary meaning of "from any location" necessarily includes any location **within the** structure, as well as any location **outside of** the structure, otherwise the words "from any location" would be rendered meaningless. According to the Commonwealth, the language "from any location" precludes any defense based on the shooter's location when he intentionally fired the gun. Further, the Commonwealth posits that the phrase "from any location" broadens and modifies the word "into." The Commonwealth argues that appellant's interpretation of the statute

9. The Statutory Construction Act recognizes that "[t]he title and preamble of a statute may be considered in the construction thereof." 1 Pa.C.S. § 1924.

would give the phrase "from any location" its opposite meaning by restricting the shooter's location to a place outside of the occupied structure.

In addition, rather than interpreting "into" as appellant would, meaning "moving from the outside to the inside" of the structure, the Commonwealth claims that the plain meaning of "into," in the context of the statute, refers to the passage of the bullet from the gun's chamber "into" the area in which it was fired. According to the Commonwealth, a shooter expels a bullet from the barrel of a gun into something whenever a firearm is discharged. The Commonwealth concludes that appellant's restrictive interpretation of the statute only makes sense if the language "from any location" is omitted entirely, citing to 18 Pa.C.S. § 2707, which prohibits the firing of a weapon "into a vehicle" but does not contain the language "from any location." The omission of the language in that statute, the Commonwealth claims, clearly indicates that a weapon fired inside a vehicle is not encompassed in the offense of firing a weapon into a vehicle.

The Commonwealth gleans further evidence that "into" describes the passage of the bullet from within the gun "into" the world at large from an examination of the statutory defenses. Section 2707.1(c)(2) provides that it is a defense if the person discharging the firearm was engaged in a hunting activity, the hunting activity was in a lawful location, and "the passage of the projectile from the firearm into the occupied structure was not intentional, knowing or reckless." 18 Pa. C.S. § 2707.1(c)(2)(i-ii). The Commonwealth asserts that the statute's "hunting defense" uses this formulation of "into" when it states that it is a defense if "the passage of the projectile **from the firearm into the occupied structure** was not intentional, knowing or reckless." 18 Pa.C.S. § 2707.1(c)(2)(ii) (emphasis added).

Addressing appellant's argument that the statute was intended to combat drive-by shootings, the Commonwealth argues first that any reference to legislative history is improper because the statute is not ambiguous. In the alternative, the Commonwealth asserts that the limited available history fully

supports the lower courts' interpretation. The Commonwealth dismisses appellant's reference to the statutes and case law of other states, stating that it is improper to attempt to divine the intent of Pennsylvania's Legislature from the actions of legislatures in our sister states. Turning to the legislative history of Section 2707.1 itself, the Commonwealth argues that, while it does not specifically address the issue before this Court, it is "entirely consistent" with a broad reading of the term "from any location." The Commonwealth notes that Section 2707.1 began as a proposal directed at a very narrow range of conduct: the original proposal was to create an offense called "attempted homicide by discharge of a firearm into an occupied building," which occurred when a person "intentionally, negligently, or recklessly discharges a firearm from any location into a building that he knows or should know to be occupied." Subsequent amendments lowered the grading of the offense (from a felony of the first degree to a felony of the third degree) and eliminated both the reference to "attempted homicide," and the requirement that the shooter reasonably should know the building was occupied. The Commonwealth also points out that the Legislature revised the definition of "occupied structure," eliminating language in the original bill that defined an occupied structure as "any building which contains residences, business, offices, or any other type of entity customarily used by others, and **having openings that enable entry of a projectile expelled by a firearm into its exterior.**" S.B. No. 1173, Session of 1999, as amended on third consideration, Apr. 11, 2000 (emphasis added). The Commonwealth acknowledges that this prior formulation of the statute would have supported appellant's interpretation of "into," but argues that the subsequent elimination of this language indicates the Legislature's intent to eliminate the requirement that the shooter be standing outside the building when firing.

Finally, the Commonwealth argues that appellant's reliance on the case law and statutes of other states is misguided on the merits. The Commonwealth points out that the North Carolina statute cited by the Commonwealth, which prohibits

the discharge of a firearm "into any . . . vehicle . . . while it is occupied" has been interpreted as criminalizing conduct "even if the firearm itself is inside the property, so long as the person discharging it is not inside the property." Commonwealth's Brief at 20 (quoting *State v. Mancuso*, 321 N.C. 464, 364 S.E.2d 359, 362 (1988)). According to the Commonwealth, this interpretation has forced appellate courts to parse through trial records to determine whether a shooter whose feet were outside a car but whose body was partially inside the car was sufficiently far enough outside to sustain a conviction under the statute. This Court, the Commonwealth pleads, should not bring this scourge down upon our own appellate courts. Likewise, the Commonwealth distinguishes the California statute cited by appellant because that statute prohibits firing "at," rather than "into," an occupied structure, Commonwealth's Brief at 21 (citing *People v. Stepney*, 120 Cal. App.3d 1016, 175 Cal.Rptr. 102 (1981)), and further notes that other jurisdictions have interpreted their statutes to encompass shooting inside an occupied structure. *Id.* at 21–22 (citing *English v. State*, 10 Ga.App. 791, 74 S.E. 286 (1912) (shooting pistol at floor is shooting "at" or "into" dwelling); *Gaines v. Commonwealth*, 505 S.W.2d 174 (Ky.1974) ("at or into" dwelling house includes person who was physically within dwelling at time he fired shot into floor)).

■ At issue in this case is the question of whether the statute, which prohibits discharging a firearm "into" an occupied structure "from any location" encompasses the act of discharging a firearm while inside the occupied structure itself. In all matters involving statutory interpretation, we apply the Statutory Construction Act, 1 Pa.C.S. § 1501 *et seq.*, which provides that the object of interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. 1 Pa.C.S. § 1921(a). A statute's plain language generally provides the best indication of legislative intent. *See, e.g., McGrory v. Dep't of Transp.*, 591 Pa. 56, 915 A.2d 1155, 1158 (2007); *Commonwealth v. Gilmour Mfg. Co.*, 573 Pa. 143, 822 A.2d 676, 679 (2003); *Pa. Fin. Responsibility Assigned Claims Plan v. English*, 541 Pa. 424, 664 A.2d 84, 87

(1995) ("Where the words of a statute are clear and free from ambiguity the legislative intent is to be gleaned from those very words."). Only where the words of a statute are not explicit will we resort to other considerations to discern legislative intent. 1 Pa.C.S. § 1921(c); *see also In re Canvass of Absentee Ballots of Nov. 4, 2003 Gen. Election,* 577 Pa. 231, 843 A.2d 1223, 1230 (2004) (citing *O'Rourke v. Commonwealth,* 566 Pa. 161, 778 A.2d 1194, 1201 (2001)); *Ramich v. Workers' Comp. Appeal Bd. (Schatz Elec., Inc.),* 564 Pa. 656, 770 A.2d 318, 322 (2001).

In their arguments, both parties focus upon the plain meaning of the word or phrase they forward as the statute's controlling term. Thus, we will begin with an examination of the statutory language. Section 2707.1, **"Discharge of a firearm into an occupied structure,"** provides:

**(a) Offense defined.**—A person commits an offense if he knowingly, intentionally, or recklessly discharges a firearm from any location into an occupied structure.

**(b) Grading.**—An offense under this section shall be a felony of the third degree.

**(c) Defense.**—It is a defense to prosecution under this section that:

(1) the person discharging the firearm was a law enforcement officer engaged in the performance of his official law enforcement duties; or

(2) the person discharging the firearm was engaged in a lawful hunting activity; and

(i) the discharge of the firearm took place from a location where the hunting activity is lawful; and

(ii) the passage of the projectile from the firearm into the occupied structure was not intentional, knowing or reckless.

**(d) Definitions.**—As used in this section, the following words and phrases shall have the meanings given to them in this subsection:

"Firearm." Any weapon which is designed to or may readily be converted to expel any projectile by the action of an explosion or the frame or receiver of any such weapon. "Occupied Structure." Any structure, vehicle, or place adapted for overnight accommodation of persons or for carrying on business therein, whether or not a person is actually present.

18 Pa.C.S. § 2707.1.

The plain meaning of "into" can be gleaned from its dictionary definition. The word "into" typically follows "a verb that carries the idea of motion . . . to indicate a place or thing . . . enterable or penetrable by or as if by a movement from the outside to the interior part." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1184 (1986). It is also defined as describing action "from the outside to the inside of; toward and within." WEBSTER'S NEW WORLD DICTIONARY 738 (2d ed.1984). Based upon these definitions, in the context of spatial relations, the plain meaning of the term "into" requires that the original location is outside of the destination—one does not walk "into" a room one is already standing in; likewise, a gun is not fired "into" a building when the shooter is located inside the building. A projectile only travels "into" an occupied structure when the projectile begins its journey outside of the structure and either enters the structure through an opening or penetrates the outer wall.

While we are unable to turn to a dictionary to ascertain the plain or ordinary meaning of the phrase "from any location," it is clear that the operative word in the phrase, at least as it relates to the case at bar, is "any." "Any" is defined as: "one, no matter which, of more than two," or "every." *Id.* at 62. Thus, if considered without relation to the word "into," the plain meaning of the phrase "from any location" encompasses "every" location the shooter could be occupying, including, necessarily, the interior of the occupied building.

Both parties insist that the plain language of Section 2707.1 is unambiguous. Nevertheless, it is clear that, given the plain, common sense meaning of both statutory phrases—"from any

location" and "into"—it would be difficult to give full logical effect to both. One must yield to the other in some measure. We do not think either party's argument is so weak or implausible that the statute can be called unambiguous in this context. Thus, our examination of the plain meaning of the two phrases reveals a latent ambiguity in the statute; one phrase must be interpreted as modifying or limiting the other, and thus principles of construction are implicated.

The lower courts, in finding that the statute was free from ambiguity, simply elevated the phrase "from any location" over the word "into." The trial court acknowledged that there was merit to the argument that the plain meaning of "into" required a person to be outside of a structure in order to fire into it, but the court then determined that the phrase "from any location" controlled. The trial court felt that the "from any location" language modified the plain meaning of "into," with the result that the trial court expanded the plain meaning of "into" to include "firing the gun from **within** the restaurant" because appellant fired the gun "into the kitchen area." Trial Ct. Op. at 5. Thus, the trial court's expansion of "into" essentially defined each room or area of a building as a separate structure, as its decision was predicated upon the fact that appellant fired the gun from one room of the restaurant towards another room.

The Superior Court went a step farther than the trial court in its interpretation of the statutory language by effectively eliminating the word "into" from the statute. The Superior Court neither discussed nor mentioned the word "into" in its opinion, instead focusing entirely on the plain meaning of the phrase "from any location." The Superior Court's interpretation would remove any requirement that the firearm be fired into anything such that the court did not even require the movement of the projectile from one room towards another. The Superior Court's construction would not even require that the shooter aim towards a separate room within the structure. Instead, the court broadly read the statute to encompass the discharge of a firearm from virtually any location where an occupied structure is involved.

We cannot agree with the Superior Court that the word "into" has no bearing on the proper interpretation on the statute. The law is clear that the "object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions." 1 Pa.C.S. § 1921(a). In determining legislative intent, we must read all sections of a statute "together and in conjunction with each other," construing them "with reference to the entire statute." *Hous. Auth. of County of Chester v. Pa. State Civil Serv. Comm'n,* 556 Pa. 621, 730 A.2d 935, 945 (1999). We are not permitted to ignore the language of a statute, nor may we deem any language to be superfluous. 1 Pa.C.S. § 1921(a). Thus, the Superior Court's simple failure to discuss or give effect to the word "into" cannot be sustained.

While the trial court did discuss the meaning of "into" and determined that it must be deemed modified by the phrase "from any location," the plain meaning of the word "into" is incompatible with that interpretation. To the ordinary, intelligent citizen looking to the conduct proscribed by Section 2707.1, the plain meaning of the word "into" suggests that the shooter must be located outside the structure; otherwise, he cannot discharge his weapon into an occupied structure. A determination that the inclusion of "from any location" modifies this plain meaning reads into the statute an expansion of criminal conduct that the Legislature did not explicitly include. As appellant notes, the lower courts' interpretation effectively modifies the statute to read: "from any location into, **or from within,** an occupied structure." Conversely, reading the statute so that "into" qualifies the term "from any location" yields logical results that do not require adding additional terms to the statute.[10] Under this construction, to be deemed criminal, the statute requires that the defendant discharge the firearm

10. As we have noted, the Commonwealth has put forward a creative and alternative "plain meaning" argument, positing that the Legislature may have intended the phrase "into" to mean "from the inside of the gun into the world at large." While the argument may be within the realm of metaphysical possibility, the interpretation strays from the ordinary usage of the term.

from any location outside the structure, and that the projectile move into the structure. Thus, "into" modifies the meaning of "from any location" to include only any location from which the shooter can physically shoot "into" the occupied structure, including other structures, moving vehicles and any other location outside of the occupied structure.

This is a logical reading which, though it may make the phrase "from any location" seem like a statement of the obvious, nevertheless does not ignore its meaning in context. When there is an interpretation available that gives effect to all of the statute's phrases and does not lead to an absurd result, that interpretation must prevail. The best and logical reading of the statute, therefore, counsels that the word "into" modifies the phrase "from any location." This construction also squares with the Section's title, which speaks of firing "into," without any location qualifier.

Importantly, our interpretation is further supported by the statutory mandate that penal statutes "shall be strictly construed." 1 Pa.C.S. § 1928(b)(1); *see also Commonwealth v. McClintic,* 589 Pa. 465, 909 A.2d 1241, 1251 (2006). Of course, the mandate to construe penal statutes narrowly does not override the "general principle that the words of a statute must be construed according to their common and approved usage," and does not require this Court to give the words of a penal statute their "narrowest possible meaning." *Commonwealth v. Booth,* 564 Pa. 228, 766 A.2d 843, 846 (2001). The mandate "does mean, however, that where ambiguity exists in the language of a penal statute, such language should be interpreted in the light most favorable to the accused. More specifically, where doubt exists concerning the proper scope of a penal statute, it is the accused who should receive the benefit of such doubt." *Id.* (internal citation omitted); *see also Commonwealth v. Dickson,* 591 Pa. 364, 918 A.2d 95, 108– 09 (2007) (statute imposing mandatory minimum sentence for person possessing firearm during robbery strictly construed to apply only to person carrying gun, not unarmed accomplice or co-conspirator); *Commonwealth v. Huggins,* 575 Pa. 395, 836

A.2d 862, 867–68 (2003) ("gross negligence" *mens rea* requirement of involuntary manslaughter statute construed to require recklessness); *Commonwealth v. Tate*, 572 Pa. 411, 816 A.2d 1097, 1098 (2003) (statute prohibiting "luring" child into motor vehicle does not encompass inchoate offense of attempting to lure child into vehicle); *Commowealth v. Scolieri*, 571 Pa. 658, 813 A.2d 672, 677–78 (2002) (Superior Court improperly broadened scope of statute prohibiting sale of alcoholic beverages to minors by construing "intentionally or knowingly" to mean "knew or should have known"); *Commonwealth v. Berkowitz*, 537 Pa. 143, 641 A.2d 1161, 1164–65 (1994) (rape statute's "forcible compulsion" element requires showing beyond lack of consent); *Commonwealth v. Scarpone*, 535 Pa. 273, 634 A.2d 1109, 1112–13 (1993) (conviction under statute prohibiting operating waste disposal facility without permit overturned because statute does not encompass illegal alteration of facility). In light of this salutary rule of statutory construction, the view of the Commonwealth and the lower courts that Section 2707.1 should be interpreted as broadly as possible, so as to criminalize both firing into and firing within an occupied structure, must fail. This expansive interpretation of Section 2707.1, however ingenious or intricate the reading may be, would operate to criminalize conduct that the statute, on its face, does not embrace. Thus, the statute, as interpreted by the lower courts, fails to give fair notice of what conduct the statute prohibits. This Court has long held that a court may not achieve an acceptable construction of a penal statute by reading into the statute terms that broaden its scope. *Commonwealth v. Fisher*, 485 Pa. 8, 400 A.2d 1284, 1287 (1979).[11][12]

11. A failure of a statute defining criminal conduct to give fair notice of the conduct deemed criminal, of course, raises due process concerns. *See, e.g., Commonwealth v. Magliocco*, 584 Pa. 244, 883 A.2d 479, 487 (2005) (citing cases). "A lack of fair warning can result from a vague statute or, less commonly, from an unreasonable judicial interpretation of statutory language that appeared to be facially narrow and precise." *Id.*

12. In light of our conclusion, we need not look to the experience of other states, with similar statutes, nor do we rely upon the argument forwarded by appellant that the purpose of the statute was to capture the specific problem of drive-by shootings.

■ The language of Section 2707.1, fairly interpreted in light of our principles of statutory construction, requires that an actor be located outside of an occupied structure in order to fire "into" that structure. Here, it was undisputed that appellant was inside the structure. Accordingly, we reverse appellant's conviction under 18 Pa.C.S. § 2707.1. Since the trial court imposed no sentence for the conviction, however, our limited reversal does not require a remand for resentencing.

Justice SAYLOR and BAER and Justice TODD join the opinion.

Justice EAKIN files a dissenting opinion in which Justice McCAFFERY joins.

Justice EAKIN, dissenting.

I respectfully dissent from the majority's conclusion that in order to be convicted under 18 Pa.C.S. § 2707.1, an individual must fire the weapon from outside the occupied structure. The plain statutory language of § 2707.1 is expansive enough to include discharging a firearm from within the structure. Section 2707.1(a) states: "A person commits an offense if he knowingly, intentionally or recklessly discharges a firearm from any location into an occupied structure." 18 Pa.C.S. 2707.1(a).

There are two pertinent elements of this crime: the place of the shots origin and its destination. The origin is defined as from any location and its place of destination is "into an occupied structure." The manifest harm the statute addresses is the termination point of the shot, not its departure point, and the word "into" speaks to that destination. "Into" does not preclude points of origin. It does not geld the unlimited element of origin, "*any* location," turning it into "any location except inside the building."

"Into" may denote moving from outside in, but one may move "into" a room even when one is within the room to start with. One moves into the night even when one was in the night to start with. One may proceed into the jungle despite being in the jungle already. One may introduce thoughts into

the dialog that is ongoing. One need not be outside the room, night, jungle, or dialog to have the word "into" be descriptive, and one need not be outside the building to shoot "into" it.

I cannot concur in adding the element "outside the structure" to this statute. Accordingly, I would affirm the Superior Court.

Justice McCAFFERY joins this dissenting opinion.