J-S40011-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JOHN ALEXANDER TARGONSKI, | |
| Appellant | No. 1758 MDA 2013 |

Appeal from the Judgment of Sentence Entered August 27, 2013
In the Court of Common Pleas of Centre County
Criminal Division at No(s): CP-14-CR-0001453-2012

BEFORE:  BENDER, P.J.E., BOWES, J., and PANELLA, J.

MEMORANDUM BY BENDER, P.J.E.:            **FILED SEPTEMBER 26, 2014**

Appellant, John Alexander Targonski, appeals from the judgment of sentence of 15 days' to 23½ months' incarceration and a concurrent term of 1 years' probation, imposed following his conviction for criminal trespass and simple assault, respectively.  Appellant challenges the sufficiency of the evidence supporting his conviction for criminal trespass.  He also claims that the trial court erred in admitting evidence of bad acts that occurred after his altercation with the victim.  After careful review, we reverse in part and affirm in part.

The trial court summarized the facts adduced at trial as follows:

> This case arises out of an altercation between two college students, [Appellant] and Peter Arsenault, in the hallway of the apartment building where they both resided.  The altercation took place in the early morning hours of Thursday on the first week of fall classes at Penn State.  Portions of the incident were captured by a hallway surveillance video camera.

The evidence at trial established that shortly after midnight on August 30, 2012, Peter Arsenault returned home to his apartment building to find a bag of trash that was leaking beer sitting in the hallway near his door. [Appellant] and his roommates were hosting another large party across the hallway, the fourth one they had thrown that week. Tired of the noise and mess caused by the parties each night, Arsenault picked up the trash and threw it inside [Appellant's] apartment, which triggered [Appellant] and several other partygoers to come into the hallway and confront Arsenault.

The confrontation turned physical and escalated. [Appellant] shoved Arsenault and punched him in the face repeatedly. While Arsenault was pushed up against his locked apartment door, his roommate Rosan Patel heard commotion, looked out the peephole, and saw Arsenault being punched. As Patel opened the door to let him in, Arsenault tumbled into the apartment, followed by a "cascade" of five to ten other people, including [Appellant]. In the apartment, [Appellant] pushed Arsenault into a wall, bounced his head off of a fire extinguisher, and punched him in the face.

Arsenault's roommate eventually succeeded in removing [Appellant] and the others from the apartment and locked the door. For approximately an hour, [Appellant] returned to pound and kick Arsenault's door, yelling threats and expletives. When Arsenault and his roommate went out on their balcony, the balcony wall was pelted with cans and bottles thrown from another balcony. Eventually the police were called to Arsenault's apartment to investigate the disturbance.

The officers who arrived on the scene found several males in the hallway who had been drinking, and [Appellant's] apartment was full of beer and liquor bottles. The officers asked [Appellant] to provide identification. He left to retrieve his identification but did not return. Officers found him lying in bed, intoxicated but uninjured, and placed him under arrest after a brief struggle. Arsenault was photographed with a bruised and swollen eye. Photographs were taken later of damage to Arsenault's apartment door lock and the adjacent wall.

Trial Court Opinion (TCO), 11/7/13, at 1-3.

On September 26, 2012, the Commonwealth filed a criminal information charging Appellant with burglary, 18 Pa.C.S. § 3502(a), a felony of the first degree; criminal trespass, 18 Pa.C.S. § 3503(a)(1)(i), a felony of the third degree; simple assault, 18 Pa.C.S. § 2701(a)(1), a misdemeanor of the second degree; and consumption or possession of liquor or malt or brewed beverages by a minor (underage drinking), 18 Pa.C.S. § 6308(a), a summary offense. Appellant proceeded to a jury trial on July 3, 2013. The jury found him guilty of criminal trespass and simple assault, but not guilty of burglary. His simultaneously held bench trial for underage drinking also resulted in a guilty verdict. On August 27, 2013, the trial court sentenced Appellant to 15 days' to 23½ months' incarceration for the offense of criminal trespass, and a concurrent term of probation of 1 year for the offense of simple assault. The court imposed a $100 fine for the offense of underage drinking.

Appellant filed a timely notice of appeal. The trial court then ordered him to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal (concise statement). He complied with that order, filing his concise statement on October 21, 2013. The trial court filed its Rule 1925(a) opinion on November 7, 2013. Appellant now presents the following questions for our review:

    I.   Where the evidence was clear that Appellant "tumbled" or "cascaded" into Peter Arsenault's apartment after being grabbed by Arsenault, did the Commonwealth fail to prove beyond reasonable doubt that Appellant possessed the

requisite *mens rea* to be convicted of the felony offense of Criminal Trespass?

II. Did the trial court err in admitting evidence of Appellant's conduct and the conduct of his associates after the altercation with Arsenault, where Appellant was charged with no offenses pertaining to conduct after the altercation and the only identifiable purpose of that evidence was to prove that Appellant was a "bully"?

Appellant's Brief at 4.

Appellant's first claim concerns the sufficiency of the evidence supporting his conviction for criminal trespass. We review sufficiency claims under the following standard:

A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

***Commonwealth v. Widmer***, 744 A.2d 745, 751 (Pa. 2000) (internal citations omitted).

The crime of criminal trespass is defined, in relevant part, as follows:

(1) A person commits an offense if, knowing that he is not licensed or privileged to do so, he:

(i) enters, gains entry by subterfuge or surreptitiously remains in any building or occupied structure or separately secured or occupied portion thereof; …

18 Pa.C.S. § 3503(a)(1).

Appellant targets his sufficiency claim on the *mens rea* element(s) of Section 3503(a)(1). Specifically, he argues that the statute requires, and that the Commonwealth failed to prove, that he acted "'knowingly' with respect to the material element of 'entry.'" Appellant's Brief at 16. He contends that the Commonwealth failed to prove that he knowingly entered Arsenault's apartment, even if Appellant knew that he was not "licensed or privileged" to enter. 18 Pa.C.S. § 3503(a)(1).

Initially, we must address the trial court's conclusion that Appellant waived this claim due to his failure "to specify the element or elements on which the evidence was insufficient" in his concise statement. TCO, at 3. We disagree with the trial court based upon the specific circumstances before us. In his concise statement, Appellant asked "[w]hether the Commonwealth presented sufficient evidence to prove beyond a reasonable doubt that the accused committed the felony offense of criminal trespass." Appellant's Concise Statement, 10/21/13, at 1 ¶1. By specifying "the felony offense," Appellant narrowed the trial court's inquiry to Appellant's culpability with respect to subsection (a) of Section 3503, as no other subsections of the criminal trespass statute could result in a felony. Furthermore, it was undisputed at trial that Appellant entered Arsenault's apartment and that he did not have permission to do so; defense counsel admitted as much during his closing argument. N.T., 7/2/13, at 263. Thus, the only true point of contention at trial with regard to the sufficiency of the evidence supporting Appellant's conviction for criminal trespass concerned

the *mens rea* element(s) of criminal trespass. We decline to find this issue waived because Appellant's failure to specify the element(s) upon which his sufficiency claim was based in his concise statement does not hinder our review in the circumstances of this case. ***See Taylor v. Owens-Corning Fiberglas Corp.***, 666 A.2d 681, 688 (Pa. Super. 1995) ("It is … within the appellate court's discretion to review the issue unless the failure to raise the issue in the [concise] statement hinders appellate review.").

Turning to the merits of Appellant's claim, Appellant argues that the evidence presented at trial did not establish that he knowingly entered Arsenault's apartment. The Commonwealth does not dispute this specifically, but instead argues that "there is no requirement in the present case that the Commonwealth present any evidence to show an intent to enter." Commonwealth's Brief at 13. The Commonwealth contends that the *mens rea* requirement of 'knowledge' contained within the criminal trespass statute applies only to the "not licensed or privileged" material element. Appellant asserts that the Commonwealth's interpretation would permit absurd and unintended results. He offers the following hypothetical to illustrate:

> Suppose that an earthquake strikes, opening a hole in the floor of the apartment of an upstairs tenant. The upstairs tenant knows that he would be unwelcome in the apartment beneath him. Nonetheless, when he falls through the earthquake-caused hole into the apartment below, can he be said to be guilty of Criminal Trespass? He has "entered" that apartment "knowing that he is not licensed or privileged to do so."

Appellant's Brief at 15.

- 6 -

This controversy demands interpretation of the criminal trespass statute. When interpreting any statute, we adhere to the following principles:

> The law is clear that the "object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions." 1 Pa.C.S. § 1921(a). In determining legislative intent, we must read all sections of a statute "together and in conjunction with each other," construing them "with reference to the entire statute." **Hous. Auth. of County of Chester v. Pa. State Civil Serv. Comm'n**, 556 Pa. 621, 730 A.2d 935, 945 (1999). We are not permitted to ignore the language of a statute, nor may we deem any language to be superfluous. 1 Pa.C.S. § 1921(a).
>
> …
>
> When there is an interpretation available that gives effect to all of the statute's phrases and does not lead to an absurd result, that interpretation must prevail.

**Commonwealth v. McCoy**, 962 A.2d 1160, 1167-68 (Pa. 2009).

Furthermore,

> penal statutes "shall be strictly construed." 1 Pa.C.S. § 1928(b)(1); **see also Commonwealth v. McClintic**, 589 Pa. 465, 909 A.2d 1241, 1251 (2006). Of course, the mandate to construe penal statutes narrowly does not override the "general principle that the words of a statute must be construed according to their common and approved usage," and does not require this Court to give the words of a penal statute their "narrowest possible meaning." **Commonwealth v. Booth**, 564 Pa. 228, 766 A.2d 843, 846 (2001). The mandate "does mean, however, that where ambiguity exists in the language of a penal statute, such language should be interpreted in the light most favorable to the accused. More specifically, where doubt exists concerning the proper scope of a penal statute, it is the accused who should receive the benefit of such doubt." **Id.**

**McCoy**, 962 A.2d at 1168-69.

- 7 -

Additional principles are provided by the Crimes Code. For instance, 18 Pa.C.S. § 301(a) provides that "[a] person is not guilty of an offense unless his liability is based on conduct which includes a voluntary act or the omission to perform an act of which he is physically capable." Moreover, Section 302 provides even more specific guidance when our interpretation turn upon the requisite level of culpability assigned to the material elements of an offense:

> **(a) Minimum requirements of culpability.--**Except as provided in section 305 of this title (relating to limitations on scope of culpability requirements), a person is not guilty of an offense unless he acted intentionally, knowingly, recklessly or negligently, as the law may require, with respect to each material element of the offense.
>
> …
>
> **(c) Culpability required unless otherwise provided.--**When the culpability sufficient to establish a material element of an offense is not prescribed by law, such element is established if a person acts intentionally, knowingly or recklessly with respect thereto.
>
> **(d) Prescribed culpability requirement applies to all material elements.--**When the law defining an offense prescribes the kind of culpability that is sufficient for the commission of an offense, without distinguishing among the material elements thereof, such provision shall apply to all the material elements of the offense, unless a contrary purpose plainly appears.

18 Pa.C.S. § 302.

Here, there are two competing interpretations of the statute in question. The Commonwealth alleges that the "knowing" element contained in Section 3503(a)(1) does not apply to subsection (a)(1)(i) (the

Commonwealth's interpretation), whereas Appellant claims that it does (Appellant's interpretation). We conclude Appellant's interpretation is superior for several reasons.

First, "[i]n determining legislative intent, we must read all sections of a statute 'together and in conjunction with each other,' construing them 'with reference to the entire statute.'" *McCoy*, 962 A.2d at 1168. The Commonwealth's interpretation, however, asks us to read subsection (a)(1)(i) independently from Section (a)(1). This conflicts with the very structure of the statute, as subsection (a)(1)(i) is contained *within* Section (a)(1).

Second, "[w]hen there is an interpretation available that gives effect to all of the statute's phrases and does not lead to an absurd result, that interpretation must prevail." *McCoy*, 962 A.2d at 1168. As illustrated by Appellant's hypothetical, the Commonwealth's interpretation can lead to absurd results. Clearly the legislature did not intend to penalize accidental or unintended trespasses as felonies. Moreover, such a reading would conflict with 18 Pa.C.S. § 301(a), which requires a "voluntary act or the omission to perform an act" for culpability to arise under a criminal statute.

Third, the Commonwealth's interpretation significantly broadens the scope of criminal liability under the criminal trespass statute by permitting mere accidental trespasses, whereas there is a statutory mandate that we strictly construe criminal statutes. We do not consider the terms of this statute ambiguous as to its scope. However, even if the terms were

ambiguous, that ambiguity must be resolved in favor of Appellant, because "where doubt exists concerning the proper scope of a penal statute, it is the accused who should receive the benefit of such doubt." *McCoy*, 962 A.2d at 1169.

Fourth, Appellant's interpretation is consistent with the dictates of 18 Pa.C.S. § 302. Section 302(d) provides that "[w]hen the law defining an offense prescribes the kind of culpability that is sufficient for the commission of an offense, without distinguishing among the material elements thereof, such provision shall apply to all the material elements of the offense, unless a contrary purpose plainly appears." 18 Pa.C.S. § 302(d). Here, the statute provides a *mens rea* element, "knowing," but fails to specifically define (or limit) its applicability to the subsequent subsections that define the conduct element(s) of the offense. Thus, Section 302(d) requires that the *mens rea* element "***shall*** apply to all the material elements of the offense," unless it is the case that "a contrary purpose plainly appears." *Id.* It must be said that any such contrary purpose would unavoidably permit the absurdity of criminal culpability arising under Appellant's hypothetical. We discern no such "contrary purpose" that "plainly appears" in the statute. *Id.*

Accordingly, we conclude that the *mens rea* element of 'knowledge' contained in Section 3503(a)(1) also applies to the material element contained in Section 3503(a)(1)(i), such that the statute requires that a defendant knows that he is "enter[ing], gain[ing] entry by subterfuge or

surreptitiously remain[ing]" in the place "that he is not licensed or privileged to do so[.]"  18 Pa.C.S. §3503(a)(1).

The Commonwealth argues that **Commonwealth v. Schwartz**, 615 A.2d 350 (Pa. Super. 1992), is in conflict with this conclusion.  We disagree. First, **Schwartz** is simply not factually analogous to the present case.  In **Schwartz**, there was testimony that the appellant punched a pane of glass, and that as a result his arm entered the home to which he had no permission to enter.  **Schwartz**, 615 A.2d at 361.  Nevertheless, the following passage from the **Schwartz** is construed by the Commonwealth, when examined *out of context*, to support the Commonwealth's interpretation:

> Appellant contends that the Commonwealth did not present any valid evidence to support an intent to enter.  No evidence was presented that shows he smashed the window and thrust his arm through the broken pane, appellant argues. **Evidence of this nature did not have to be presented to support a conviction of criminal trespass.**

**Id.** (emphasis added).  No citation was provided for this conclusion by the **Schwartz** Court apart from the statute itself.  Notably, too, at no point did the **Schwartz** Court specifically state that the 'entry' element of the criminal trespass statute did not demand a *mens rea* requirement.  Indeed, another interpretation of the highlighted language above makes more sense.  When the **Schwartz** Court stated that "[e]vidence of this nature did not have to be presented to support a conviction of criminal trespass[,]" it was referring only to the appellant's claim that the Commonwealth did not present

- 11 -

evidence that he "thrust his arm through the broken pane." *Id.* This reading is consistent with the *Schwartz* Court's later conclusion that the testimony that the appellant "punched the pane, causing the glass to fall" on the victim inside the home "supported a conclusion that the appellant entered the premises without permission." *Id.* at 361. Certainly, there appeared to be little doubt that the punch was intentional in the sense that it was "practically certain" that his arm would cross the threshold that was demarked by the window and, thus, that he intended his fist and/or arm to 'enter.' *See* 18 Pa.C.S. § 302(b)(2)(ii) ("A person acts knowingly with respect to a material element of an offense when: … (ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result."). Our interpretation of the *Schwartz* decision is also supported by the fact that in the 22 instances in which *Schwartz* has been cited in subsequent cases, it has never been cited for the proposition that the entry element of the criminal trespass statute does not require an intent or *mens rea* element. Thus, we conclude that *Schwartz* does not contradict Appellant's interpretation, and has simply been misinterpreted by the Commonwealth.

We must now address, of course, whether there was sufficient evidence that Appellant knowingly entered Arsenault's apartment. We conclude that there was not. The undisputed facts at trial reveal that Appellant and Arsenault fell into Arsenault's apartment when Arsenault's roommate opened the door. Thus, Appellant's *entry* into the apartment was

involuntary. There was no evidence presented that Appellant had any intention of entering Appellant's apartment *at the time Arsenault's roommate opened the door*.

However, the criminal trespass statute does not limit itself to situations where a defendant knowingly enters a place that he is not licensed or privileged to do so. A conviction can also be obtained where a defendant "gains entry by subterfuge or surreptitiously remains" in the location in question. 18 Pa.C.S. § 3503(a)(1)(i). Nevertheless, we conclude that the Commonwealth did not present sufficient evidence supporting either of these two alternatives.

Clearly the "entry by subterfuge" language does not apply in this instance, as is obvious from the manner in which Appellant entered Arsenault's apartment. The Commonwealth argues, however, that Appellant "remained in the apartment until others were eventually able to remove" him, suggesting his culpability under the "surreptitiously remains" provision. Commonwealth's Brief at 13; 18 Pa.C.S. § 3503(a)(1)(i). Although accurately representing the evidence, the Commonwealth overlooks the qualification on the term "remains" in the statute, which is that that action must be accomplished "surreptitiously." 18 Pa.C.S. § 3503(a)(1)(i). The jury could not have found that Appellant remained in Arsenault's apartment surreptitiously, as no evidence supporting that theory was presented at trial and, in fact, the trial evidence directly contradicted such a theory. There was nothing remotely secretive or stealthy about the manner in which

Appellant remained in the apartment. ***See*** The American Heritage Dictionary 827 (4th ed. 2001) (defining "surreptitious" as "[s]ecret and stealthy"). We conclude, therefore, that there was insufficient evidence supporting Appellant's conviction for criminal trespass in this instance.

As Appellant was also convicted of simple assault and underage drinking, we move on to address his remaining claim(s). Appellant argues that the trial court erred by admitting evidence "that Appellant and his associates engaged in inappropriate behavior" after Appellant was removed from Arsenault's apartment. Appellant's Brief at 19. Appellant preserved this claim, in part, when he filed a pre-trial motion *in limine* "seeking to exclude evidence that, following the altercation and after Appellant had departed Arsenault's residence, Appellant and his associates pounded on the door to Arsenault's apartment, threw objects at Arsenault's balcony, and threatened the personal safety of Arsenault and his roommates." ***Id.*** at 10. These issues arose again during the course of the trial.

> We review claims of evidentiary error under the following standard:
>
> The admission of evidence is solely within the province of the trial court, and a decision thereto will not be disturbed absent a showing of an abuse of discretion. "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias[,] or ill-will discretion ... is abused."

***Commonwealth v. Murray***, 83 A.3d 137, 155-56 (Pa. 2013) (internal citations omitted).

Initially, we must note that Appellant is actually raising multiple claims of error concerning each act of misconduct that occurred after he was removed from Arsenault's apartment. These multiple claims can be distilled into two general categories: first, Appellant's own subsequent misconduct and, second, the misconduct of his associates. Both sets of claims are governed by Pa.R.E. 404(b).

Rule 404(b) provides, in part, that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Pa.R.E. 404(b)(1). However, such evidence is admissible "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Pa.R.E. 404(b)(2). Nevertheless, Rule 404(b)(2) reminds us that "[i]n a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice." *Id.*

The 'subsequent bad acts' evidence pertaining to Appellant's conduct consisted primarily of video evidence of Appellant's repeatedly charging and apparently bashing Arsenault's apartment door after Appellant had been removed from Arsenault's apartment. There was also testimony from Arsenault and his roommate corroborating the video evidence and their recollection of the verbal threats issued by Appellant during that time. The trial court determined that this evidence was admissible because it was "relevant to show that [Appellant] did not act accidently or in self-defense in

committing the offenses but that he knew what he was doing and intended to do it." TCO, at 5. The court also found this evidence admissible "pursuant to the *res gestae* exception, as the conduct was clearly related in time, place, and motive to the earlier assault and trespass." ***Id.***

We discern no abuse of discretion with the admission of this evidence. Part of the theory underlying Appellant's defense at trial was that he was acting in self-defense when he assaulted Arsenault. Appellant's behavior after he was removed from Arsenault's apartment was probative of a motive and/or intent that contradicted his self-defense theory.

As to the admission of evidence of the 'bad acts' of Appellant's associates, their actions were not 'bad acts' within the meaning of Rule 404(b). Rule 404(b)(1) prohibits the admission of 'bad acts' evidence "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Pa.R.E. 404(b)(1). This evidence was not admitted to prove Appellant's character, as the evidence did not concern Appellant's actions.

> The trial court described how this matter arose at trial as follows:

> Arsenault's roommate Rosan Patel, in testifying about what he witnessed in the hallway and in the apartment, referred several times to actions "they" took. Defense counsel objected, arguing that Patel's testimony about the group action was irrelevant to [Appellant]'s guilt and could improperly attribute conduct of others to [Appellant]. The Court gave the following response and admonishment: "I think the jury understands that. Now, if [the prosecutor] wants to focus in specifically on conduct that allegedly was committed by your client, she will here in a moment, but at this point in time I think you all understand he is using the word they and that is not attributed to [Appellant]."

- 16 -

> (Trial Transcript at p. 112-113.)  In the testimony that followed, Patel clarified which actions he observed by [Appellant] in particular.  Any confusion created by Patel's earlier testimony was cured by the Court's admonishment and the subsequent testimony by Patel.

TCO, at 7.

We discern no abuse of discretion on the part of the trial court with regard to its treatment of this evidence.  The court's instruction to the jury clarified that the evidence of the actions of Appellant's associates were not to be attributed to Appellant.  Moreover, the trial court cannot be said to have improperly admitted that evidence under Rule 404(b)(2), because the evidence did not fall within the purview of that rule.  If anything, the evidence was objectionable as irrelevant.  Although Appellant raised a relevancy objection to this evidence at trial, he has limited his argument in his brief to its admissibility under Rule 404.  Accordingly, he has waived the claim that such evidence was irrelevant by failing to raise it in his brief.

In sum, we conclude that Appellant's sufficiency claim with regard to his conviction for criminal trespass is meritorious but that his evidentiary claim is meritless.  Accordingly, we vacate Appellant's sentence for criminal trespass, but affirm the judgment of sentence with respect to his conviction for simple assault.

*Affirmed* in part, *reversed* in part.  Jurisdiction *relinquished*.

Judge Panella joins in the memorandum.

Judge Bowes files a concurring and dissenting memorandum.

- 17 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/26/2014