J-S25014-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| TYRONE BEALS, | |
| Appellant | No. 600 EDA 2016 |

Appeal from the Judgment of Sentence Entered January 20, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):
CP-51-CR-0005232-2015
CP-51-CR-0005233-2015

BEFORE:  BENDER, P.J.E., RANSOM, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:                **FILED JUNE 06, 2017**

Appellant, Tyrone Beals, appeals from the judgment of sentence of an aggregate term of 11½-23 months' incarceration and two years' probation, imposed after he was convicted of aggravated assault, 18 Pa.C.S. § 2702(a), disarming a law enforcement officer, 18 Pa.C.S. § 5104.1, simple assault, 18 Pa.C.S. § 2701(a), and resisting arrest, 18 Pa.C.S. § 5104.  We affirm.

The trial court summarized the procedural and factual background of this case as follows:

> **Procedural History**
>
> On August 31, 2015, [Appellant] proceeded to trial before this [c]ourt, sitting without a jury.  [Appellant] was convicted of [a]ggravated assault (18 Pa.C.S. § 2702(a)), [d]isarming a law enforcement officer (18 Pa.C.S. § 5104.1), [s]imple assault (18 Pa.C.S. § 2701(a)), and [r]esisting arrest (18 Pa.C.S. § 5104).

On January 20, 2016, [Appellant] was sentenced [to] 11½-23 months on the [a]ggravated assault conviction, a concurrent term of 11½-23 months on the [d]isarming law enforcement conviction, and a consecutive term of two years['] probation on the [r]esisting arrest conviction. The [s]imple assault conviction merged for purposes of sentencing.

A timely notice of appeal was filed on February 17, 2016.

On February 18, 2016, the [c]ourt entered an order directing the filing of a Statement of Errors Complained of on Appeal, pursuant to Pa.R.A.P. 1925(b), within 21 days.

[Appellant] filed a motion for extension of time in which to file the 1925(b) Statement on March 10, 2016, which motion was granted on May 5, 2016.

A timely Rule 1925(b) [s]tatement was filed on May 5, 2016.

**Factual History**

On January 6, 2015, at about 12:30 PM, Police Officers [Terrence] Erwin and [Teresa] Sanchious received a radio call for a man causing a disturbance and refusing to leave the Ocean Harbor Restaurant, in the vicinity of 1032 Race Street. At that location[,] the officers were flagged down by the hostess of the Ocean Harbor Restaurant, who asked them to remove [Appellant] from the premises. [Appellant] was manifesting mental health issues.

As the officers escorted [Appellant] out of the premises and attempted to check his identification, [Appellant] became involved in an argument with Officer Sanchious. [Appellant] then began to clench his fists up and down at the officers in an aggressive manner.

In response, Officer Sanchious attempted to handcuff [Appellant] for the officers' safety and [Appellant's], at which point [Appellant] swung at Officer Erwin. Officer Erwin then attempted to grab [Appellant], who continue[d] to swing at the officers and [took] possession of Officer Sanchious' [t]aser. Officer Erwin pushed [Appellant] against the wall, as [Appellant] attempted to use the [t]aser against him. Officer Erwin was able to knock the

[t]aser out of [Appellant's] hand. After the [t]aser fell, [Appellant] continued to struggle with and swing at Officer Erwin. Another officer arrived on the scene and was able to help Officer Erwin pin [Appellant] against the wall and get his hands behind his back to handcuff him.

Trial Court Opinion (TCO), 6/3/2016, at 1-2 (citations to record omitted).

On appeal, Appellant raises a single issue for our review:

Was not the evidence insufficient to find [Appellant] guilty beyond a reasonable doubt of the charge of disarming a law enforcement officer in that the taser which [Appellant] was alleged to have taken from the officer is not a "weapon" as that term is meant under 18 Pa.C.S. § 5104.1?[1]

Appellant's Brief at 3.

Initially, we note that while Appellant poses his issue as a challenge to the sufficiency of the evidence to convict him of disarming a law enforcement officer, he in fact asks us to interpret 18 Pa.C.S. § 5104.1. "[B]ecause statutory interpretation implicates a question of law, our scope of review is plenary and our standard of review is *de novo*." ***Commonwealth v. Gerald***, 47 A.3d 858, 859 (Pa. Super. 2012) (citation omitted). Additionally, we bear in mind that:

Our interpretation is guided by the polestar principles set forth in the Statutory Construction Act, 1 Pa.C.S.[] § 1501 *et seq*. which has as its paramount tenet that "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S.[] § 1921(a).

As we have often recognized, "[t]he General Assembly's intent is best expressed through the plain language of the statute." ***Commonwealth v. Brown***, 603 Pa. 31, 39, 981 A.2d 893, 897

_____

[1] As discussed *infra*, this statute pertains to the offense of disarming a law enforcement officer. ***See*** 18 Pa.C.S. § 5104.1.

(2009); ***Commonwealth v. McCoy***, 599 Pa. 599, 609, 962 A.2d 1160, 1166 (2009). Therefore, when the terms of a statute are clear and unambiguous, they will be given effect consistent with their plain and common meaning. 1 Pa.C.S.[] § 1921(b); ***Commonwealth v. Kelley***, 569 Pa. 179, 184, 801 A.2d 551, 554 (2002). This means ascribing to the particular words and phrases the definitions which they have acquired through their common and approved usage. 1 Pa.C.S.[] § 1903. It is only in instances where the words of a statute are not explicit, or they are ambiguous, is there need to resort to consideration of the factors in aid of construction enumerated in 1 Pa.C.S.[] § 1921(c). ***McCoy***, 599 Pa. at 610, 962 A.2d at 1166; ***Commonwealth v. Fithian***, 599 Pa. 180, 194, 961 A.2d 66, 74 (2008); ***see also*** 1 Pa.C.S.[] § 1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.").

Concomitant with these considerations, the Statutory Construction Act also sets forth certain presumptions regarding the General Assembly's enactment of statutes which are to be applied when attempting to ascertain its legislative intent. In particular, when interpreting a statutory provision we must presume that the legislature: does not intend a result that is unreasonable, absurd, or impossible of execution, 1 Pa.C.S.[] § 1922(1); and intends the entirety of the statute to be certain, 1 Pa.C.S.[] § 1922(2). Additionally, since [this statute] is a penal statute, it must be strictly construed. 1 Pa.C.S.[] § 1928(b)(1). However, this principle does not require that our Court give the words of a statute their "narrowest possible meaning," nor does it "override the 'general principle that the words of a statute must be construed according to their common and approved usage.'" ***McCoy***, 599 Pa. at 614, 962 A.2d at 1168 (quoting ***Commonwealth v. Booth***, 564 Pa. 228, 234, 766 A.2d 843, 846 (2001)); ***see also*** 18 Pa.C.S.[] § 105 (the provisions of the Crimes Code are to "be construed according to the fair import of their terms"). Rather, "where doubt exists concerning the proper scope of a penal statute, it is the accused who should receive the benefit of such doubt." ***Brown***, 603 Pa. at 39, 981 A.2d at 898 (quoting ***Booth***, 564 Pa. at 234, 766 A.2d at 846).

***Gerald***, 47 A.3d at 859-60 (brackets in original; citation omitted).

Here, the statute at issue provides the following:

**(a) Offense defined.--**A person commits the offense of disarming a law enforcement officer if he:

(1) without lawful authorization, removes or attempts to remove a firearm, rifle, shotgun or weapon from the person of a law enforcement officer or corrections officer, or deprives a law enforcement officer or corrections officer of the use of a firearm, rifle, shotgun or weapon, when the officer is acting within the scope of the officer's duties; and

(2) has reasonable cause to know or knows that the individual is a law enforcement officer or corrections officer.

**(b) Grading.--**A violation of this section constitutes a felony of the third degree.

18 Pa.C.S. § 5104.1.

Both parties acknowledge that "weapon" is not defined by the statute.[2,3]  Nonetheless, Appellant argues that "a taser is not a 'weapon' as that term is meant within the statute."  Appellant's Brief at 8.  He claims that "[i]n the statute in question in this matter, the objects which, when taken from a police officer, constitute the crime of disarming a police officer, are 'a firearm, rifle, shotgun or weapon.'  All of the items preceding the term 'weapon' in this statute are 'guns'...."  ***Id.*** at 10 (citation omitted).  Consequently, Appellant insists that "the term 'weapon' in this statute must

_____

[2] ***See*** Appellant's Brief at 9 ("The term 'weapon' is not defined within § 5104.1, nor otherwise defined relevant to this statute within the Crime Codes."); Commonwealth's Brief at 8 ("The word 'weapon' is not defined by Section 5104.1 or existing case law interpreting this specific statute....").

[3] We chastise the Commonwealth for filing its appellee brief approximately three months late.  We ordered the Commonwealth to file its brief on or before January 23, 2017.  Yet, it did not file its brief until April 27, 2017.

likewise be interpreted to mean a 'gun' rather than a taser." ***Id.*** Further,

Appellant claims that the legislature must have intended to adopt the

meaning of "the term 'firearm' from the definitions section of the Uniform

Firearms Act[, 18 Pa.C.S. § 6101, *et seq.*] (which only includes items which

could be considered to be 'guns')" because "the list of items [in § 5104.1]

would be redundant, since a rifle or shotgun are also 'firearms,' within the

common meaning of that word." ***Id.*** at 7, 11.[4] Finally, he asserts that "the

legislature could have included the term 'taser' or 'electronic incapacitation

device' within § 5104.1 had it intended the term 'weapon' within that statute

to mean something more than a 'gun.'" ***Id.*** at 13.

We deem all of these arguments to be meritless. We reiterate that

"when the terms of a statute are clear and unambiguous, they will be given

effect consistent with their plain and common meaning. This means

ascribing to the particular words and phrases the definitions which they have

acquired through their common and approved usage." ***Gerald***, 47 A.3d at

_____

[4] According to Appellant, a firearm is defined in the Uniform Firearms Act as "[a]ny pistol or revolver with a barrel length less than 15 inches, any shotgun with a barrel length less than 18 inches or any rifle with a barrel length less than 16 inches, or any pistol, revolver, rifle or shotgun with an overall length of less than 26 inches. The barrel length of a firearm shall be determined by measuring from the muzzle of the barrel to the face of the closed action, bolt or cylinder, whichever is applicable." Appellant's Brief at 11 (citing 18 Pa.C.S. § 6102). Appellant contends that "[u]nder this specific meaning of the word, … a rifle or shotgun [c]ould exist, that is not a 'firearm' as so defined (*e.g.*, a shotgun with a barrel length ***more*** than 18 inches or a rifle with a barrel length more than 16 inches)." ***Id.*** (emphasis in original).

860 (citations omitted). In the case *sub judice*, Appellant attempts to **create ambiguity** in the statute. Nevertheless, we discern no ambiguity. The plain and common meaning of "weapon" encompasses more than merely guns, and includes tasers, which Appellant acknowledges are designed to cause temporary pain and immobilization. Appellant's Brief at 9 (citations omitted).[5] Accordingly, we conclude that the evidence was sufficient to convict Appellant of disarming a law enforcement officer.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/6/2017

---

[5] The Commonwealth explains that "[t]he *Merriam-Webster Dictionary* defines a 'weapon' as 'something (such as a club, knife, or gun) used to injure, defeat or destroy[,]" and that "*Black Law's Dictionary* defines a weapon as 'an instrument used in fighting; an instrument of offensive or defensive combat.'" Commonwealth's Brief at 8 (citations omitted). In contrast, Appellant does not provide a common definition of "weapon," but instead argues that "[t]he term 'weapon' in § 5104.1 must mean only a device which fires a bullet, otherwise known in common terms as a 'gun.'" Appellant's Brief at 7; **see also id.** at 9 ("[I]t is apparent that the term 'weapon' must be defined to mean a gun….").